THE STATE ex rel. INTER-INSURANCE AUXILIARY, as Agent for MERCHANTS RECIPROCAL UNDERWRITERS, v. CHARLES G. REVELLE, Superintendent of Insurance.

In Banc, April 13, 1914.

1. **INSURANCE: Power of State to Regulate.** The Legislature has power to regulate insurance contracts, whether entered into by individuals, associations or corporations.

2. ———: ———: **Discrimination.** In the exercise of its power to regulate insurance contracts the General Assembly must make the same regulations as to all members of any particular class, and impose equal conditions and burdens upon them. The Constitution does not permit any discrimination between individuals composing a class of natural persons engaged in any trade or calling the prosecution of which affects the public

257 Mo. 34

welfare, or between the members of a class of corporate in-surers.

3. ———: ———: ———: Inter-Indemnity Contract Law. Tested by this rule, the Inter-Indemnity Insurance contract law of 1911, Laws 1911, p. 301, permitting individuals, firms and corporations to make contracts providing indemnity among each other from casualty or other contingency, or from fire loss or damage to their own property, and declaring the mak-ing of such contracts shall not constitute the business of insurance and that such business shall not be subject to the laws of this State relating to insurance, is either unconstitu-tional or it has repealed *pro tanto* the existing statutes regu-lating insurance.

4. ———: Elements of Contract. The essential elements of a contract of insurance are an agreement, oral or written, whereby for a legal consideration the promisor undertakes to indemnify the promisee if he suffer a specified loss.

5. ———: Inter-Indemnity Contract Law: Dishonest and Mis-leading Title: Unconstitutional. To enact a statute repeal-ing another the General Assembly must have before it a bill which contains one subject, which must be clearly expressed in its title. The subject must be pointed out by a title which is not designed to mislead either the members of the Legisla-ture or the people, and the title must be a fair forecast of the body of the bill. The title to the Inter-Indemnity Insur-ance Contract law of 1911, Laws 1911, p. 301, which is, "An act defining certain classes of indemnity contracts, prescribing regulations therefor, and fixing a license fee," was misleading and did not clearly express the subject of the bill, because the bill does not define indemnity contracts, and it prescribes no regulation therefor, and is misleading because the bill untruth-fully declares that the making of contracts providing indemnity from loss or damage by fire shall not constitute the business of insurance, and the title gives no notice of the fact that the bill says the making of such indemnity contracts "shall not be subject to the laws of this State relating to insurance."

6. ———: ———: Partial Repeal of General Law: Special Law. The Constitution declaring that "nor shall the General Assem-bly indirectly enact such special or local law by the partial repeal of a general law," the Inter-Indemnity Insurance Con-tract law of 1911, Laws 1911, p. 301, which declares that "the making of contracts between individuals, firms or corporations providing indemnity among each other from casualty or other contingency, or from fire loss or damage to their own prop-erty . . . shall not be subject to the laws of this State relating to insurance," thereby restricting the benefits of the

bill to such persons, and denying to all other persons special exemption from the laws regulating insurance, is a special law enacted for the special benefit of the contract-makers mentioned therein, and *pro tanto* attempts to repeal the general laws regulating insurance, and is therefore invalid.

MANDAMUS.

WRIT DENIED.

*William J. Jones* for relator.

(1) The Act of 1911 (Laws 1911, p. 301), entitled, "An Act defining certain classes of indemnity contracts, prescribing regulations therefor, and fixing a license fee," is not unconstitutional and void. It does not violate section 28 of article 4 of the Constitution of Missouri. The title clearly expresses the general contents of said act. Said act does not contain more than one subject. (2) The act is not so vague, indefinite and uncertain in its contents as to make the same void. Said act does define what are contracts for inter-indemnity or inter-insurance; it does say what kind or character of contracts for indemnity do not constitute the business of insurance and shall not be subject to the laws of this State relating to insurance. Blanchard Co. v. Hamblin, 162 Mo. App. 242. (3) The Merchants Reciprocal Underwriters is an inter-insurance or inter-indemnity association or exchange composed of individuals, firms or corporations for the purpose of exchanging contracts providing insurance or indemnity among its own members or subscribers against loss by fire, lightning and cyclone to their own property. It is not engaged in the general insurance business, and does not write insurance for the general public. (4) The form of contract or policy exchanged by the subscribers of the Merchants Reciprocal Underwriters is a contract of inter-insurance or inter-indemnity, and is not the ordinary form of old line fire insurance policy.

*Boyle & Howell, Joseph S. Brooks* and *R. F. Gilkerson amici curiae.*

*John T. Barker,* Attorney-General, and *Ernest A. Green,* Assistant Attorney-General, for respondent.

The Act of 1911 (Laws 1911, p. 301), entitled, "An act defining certain classes of indemnity contracts, prescribing regulations therefor and fixing a license fee," is unconstitutional and void: (a) Said act is violative of section 28 of article IV of the Constitution in that the title to said act does not clearly express the general contents of said act, and said act contains more than one subject, which separate subjects are not clearly expressed in the title. (b) Said act is so vague, indefinite and uncertain as to make the act absolutely void for indefiniteness. Sec. 28, art. 4, Constitution; State v. Coffee & Tea Co., 171 Mo. 639; State ex rel. v. County Court, 102 Mo. 537.

## STATEMENT..

The relator prayed an alternative writ of mandamus to compel the Superintendent of Insurance to issue to its principal a certificate to do inter-insurance business in this State, claiming it was so authorized by compliance with the terms of the Act of 1911, Laws 1911, p. 301. The act in question is, to-wit:

(H. B. 277.)

INSURANCE: Inter-Indemnity Contracts.

AN ACT defining certain classes of indemnity contracts, prescribing regulations therefor, and fixing a license fee.

| SECTION | SECTION |
|---|---|
| 1. Contracts for indemnity shall not constitute insurance business. | 3. Agent to procure certificate of authority, fee, etc. |
| 2. Declaration shall be filed, where, shall contain what. | |

*Be it enacted by the General Assembly of the State of Missouri, as follows:*

Section 1. *Contracts for indemnity shall not constitute insurance business.*—The making of contracts between individuals, firms

or corporations providing indemnity among each other from casualty or other contingency, or from fire loss or other damage to their own property, shall not constitute the business of insurance, and shall not be subject to the laws of this State relating to insurance.

Sec. 2. *Declaration shall be filed, where; shall contain what.*— The attorney, agent or other representative acting for such individuals, firms or corporations, shall file with the Superintendent of Insurance of this State, a declaration in writing, verified by the oath of such attorney, agent or other representative, setting forth:

(a)  The name or title of the office through which such individuals, firms or corporations exchange such contracts.

(b)  A copy of the form of contract under or by which such indemnity is to be effected.

(c)  The location of the office or offices through which such contracts are to be issued.

(d)  That service of process may be had upon the Superintendent of Insurance in this State in all suits arising out of such contracts.

Sec. 3. *Agent to procure certificate of authority, fee, etc.*— Every attorney, agent or other representative through whom are issued or negotiated any contracts for indemnity of the character referred to in this act, shall procure from the Superintendent of Insurance annually a certificate of authority, stating that all the requirements of this act, which are applicable, have been complied with; and upon such compliance, and the payment of a fee of two dollars, the Superintendent of Insurance shall issue such certificate.

Approved March 9, 1911.

This court ordered the writ. Thereupon the respondent waived its issuance and filed his return to the petition of relator refusing to issue the license or certificate; first, for that relator, being a corporation, could not legally be the agent of its alleged principal nor could be lawfully incorporated for that purpose; second, that relator had not complied with certain rules established by the Insurance Department for the purpose of ascertaining the nature of its proposed business and its good faith in conducting the same, and that relator had assumed a name so similar to that of the previous association as to be deceptive and confusing; third, that the act of the Legislature, supra, is unconstitutional.

To these returns relator filed a reply; whereupon, the case was submitted, after oral argument in this

court, upon the pleadings and exhibits and the following admitted facts:

"First. That the Inter-Insurance Auxiliary Company is incorporated for the following purposes: to inspect insurance risks of whatever nature or character; to protect property from loss before or after damage by covering, guarding, removal, storage, or otherwise; to adjust and settle losses or claims for loss or damage; to furnish office facilities and experienced clerical and other employees to individuals, insurance, inter-insurance or inter-indemnity and other companies and associations; to act as agent, manager, or other representatives for inter-insurance or inter-indemnity exchanges or associations and for the persons, firms and corporations composing the same; and generally to do any and all things incident and necessary to the carrying out of the above purposes.

"Secondly, That on July 22, 1913, the date of the filing of relator's application for a license, the following inter-insurance associations or reciprocal exchanges had been licensed by the Superintendent of Insurance, viz:"

Here follows a list of the names of a number of associations so licensed.

## OPINION.

BOND, J. (After stating the facts as above).—I. The pivotal point on this appeal is whether the act of the Legislature, supra, relied on by the relator as the authority for the conduct of the business in which its principal seeks to engage without being amenable to the insurance laws of this State regulating

Indemnity
Contracts:
Insurance.

that business, is a constitutional enactment? We think it is not. The power of the Legislature to regulate insurance contracts, whether entered into by individuals, associations or corporations is not an open question either

on precedent or principle. [R. S. 1909, secs. 7003, 7041; Laws 1911, p. 271, amending Sec. 7008, R. S. 1909; Laws 1911, p. 283, amending Sec. 7099, R. S. 1909.]

The root of this control lies in the paramount power of the State to regulate its internal affairs for the protection and well-being of its citizens and to that end, to impose salutary and equal conditions or burdens on any trade and calling, the prosecution of which affects the public welfare. In the exercise of this power, however, the State must make the same regulations as to all the member of the particular class, for the Constitution does not permit any discrimination between individuals composing a class of natural persons engaged in that calling, nor between the members of a class of corporate insurers. [State v. Stone, 118 Mo. l. c. 401.]

In the pursuance of that policy and within constitutional limitations, the Legislature has provided in this State an insurance department, which is charged with the duty of executing the laws in relation to insurance and insurance companies doing business in this State. [R. S. 1909, sec. 6877.] It is the duty of that department to compel all persons, whether natural or artificial, to observe the restrictions and safeguards prescribed by law for the transaction of the business of insuring life or property. And as to the obligations assumed by such persons the statute of this State is to-wit: "No individual or association of individuals, under any style or name, shall be permitted to do the business mentioned in this chapter within the State of Missouri, unless he or they shall first fully comply with all the provisions of the laws of this State governing the business of insurance." [R. S. 1909, sec. 7041.]

The essential elements of a contract of insurance are an agreement, oral or written, whereby for a legal consideration the promisor undertakes to indemnify

the promisee if he shall suffer a specified loss.  [1 May on Insurance, secs. 1, 2, and 43; Duff v. Fire Assn., 129 Mo. 1. c. 465; State v. Phelan, 66 Mo. App. 1. c. 558.]  That the contracts proposed by the relator as the representative of its principal  were of this character is not denied, and is fully proved by the terms and form of the policy attached to its petition for the writ.

In the matter in hand the relator is a corporation which assumes to be the agent with plenary power to represent an association of individuals, firms or corporations known as the "Merchants Reciprocal Underwriters."  This body is made up of such persons, firms or corporations as shall first accept one of its policies of insurance and in the application therefor, shall have executed a power of attorney to relator to underwrite for the applicant in the name of "manager," policies of insurance against loss or damage by fire, etc.  In substance to do any and all things which such "manager," if insurer, could do of his own initiative.  The applicant is also required to appoint the corporate relator as "manager" of the body which he seeks to join and his grant of said power of attorney is "to form part of" his contract of insurance with this exchange.

By the term "exchange" the policy says "is meant" the persons who are subscribers at the insurers' exchange, to Merchants Reciprocal Exchange. From this we take it, the general body has insurers' exchanges at different points, for the printed application speaks of the power to "transfer the office" where the indemnity contract is made from St. Louis to any other point.  Among other powers granted to the "manager," the right to take fifteen per cent of the cost of insurance and expenses, from the funds which each member is to pay, is not overlooked.

It is perfectly plain from the outline of the business which relator seeks to do as the agent or man-

ager of all persons to whom relator shall issue policies, that it is a state-wide plan with no other requirements as to membership than that the applicant shall insure his property and give the "manager" the power to do all things, simply by using the name "manager," which the member could do himself. The plan provides no guaranty of solvency beyond what may be left of the "funds payable by the single subscriber" after the subtraction therefrom, by the manager, of his stipulated per cent and all the cost and expenses which the manager may be put to in carrying on the insurance business. Moreover, the policy itself provides that no joint liability shall be incurrable by the insurer and it is not suggested that the association or its corporate *alter ego*, relator, is to be liable in any way whatever in case of the accrual of a right of action on one of the policies. Indeed, the policy itself expressly provides that *one* only of the members of the Merchants Reciprocal Underwriters shall be suable in case of a default, and that the other members shall abide that action as to their *separate* responsibility which shall bear the same proportion to the entire loss which his premium bears to all other premiums then in force.

In order to enable the promoters thereof to carry out the above scheme, it was indispensable that the statutes safeguarding the insurance should be repealed. This was comprehended, and the result was the legislative act under which relator is now demanding that its principal be licensed to do insurance business in this State free from burdens or restrictions imposed on that business by the General Assembly. It is apparent that unless the legislative act under review has repealed *pro tanto* the existing statutes regulating insurance, the Superintendent of Insurance would violate the law if he gave his official sanction to the business of relator's principal. As the necessary effect of the act in question is to repeal the insurance laws

in favor of the persons mentioned in the act, it becomes important to determine if it was constitutionally enacted.

II.   Before the Legislature can enact a repealatory act it must have before it a bill which contains "one subject" which "shall be *clearly expressed* in its title." [Constitution, art. 4, sec. 28.] This is a mandatory provision though liberally construed. It will not annul an act where all its provisions radiate from the "single subject" of the bill and are within its just scope and reasonable application, and where *that subject* is pointed out by a title which is not designed to mislead either the members of the Legislature or the people, but which contains a fair forecast of the contents of the bill. [State ex rel. v. County Court, 128 Mo. 427; O'Connor v. Transit Co., 198 Mo. 1. c. 639; State v. Burgdoerfer, 107 Mo. 1. c. 30; City of Kansas v. Payne, 71 Mo. 1. c. 162.]

<span style="margin">Title to Statute: Misleading.</span>

In the matter in hand we need not consider any question of unity of subject in the body of the bill, for the fault with this act lies in the fact that the title does not "clearly express" the subject of the bill. A simple glance at the enacting clause of the bill shows that it was fashioned so as to abrogate the application of the insurance laws to every policy issued in this State to a person, firm or corporation who should become a member of the body issuing the policy. Such a business would necessarily accommodate itself to the demand for insurance of a large percentage of the citizens of this State. To put it in operation it was necessary, however, to repeal the existing statutes governing insurance, and the body of the bill, if valid, accomplishes that object. But it does not do so openly. It resorts to the device of stating what is not true (except this statute can be held to make it true) that contracts of indemnity made for fire losses or

other damages to property are not insurance contracts, and hence, shall not "be subject" to the insurance laws of this State. Or to put the matter in another form, the bill provides that insurance is not insurance.

Conceding the power of the Legislature, absent constitutional restrictions, to change or abolish any rule or principle of law, still its act in so doing, must be by a bill whose title shall truthfully describe its object. It is as clear as consciousness, that no title would perform that office if it stated the bill to which it was prefixed was one to "define" certain insurance contracts, and the body of the bill undertook, not to alter the legal rights and liabilities of the parties to such contract, but simply to *exempt* them from the application of laws governing similar contracts. In such a case the bill would define nothing. A definition means to state in other words the meaning of certain terms or language. The bill under review did not set forth the meaning of the terms "indemnity contracts" nor did it explain that they were synonymous with insurance contracts as has been universally adjudged. On the contrary, the bill in question instead of so *defining* the "indemnity contracts" mentioned in its title, bluntly destroyed the definition attached to them by law and gave no other. This was in clear and direct contradiction to the words contained in the title to the bill, for they pointed out the sole object of the bill to be the "defining" of certain classes of indemnity contracts.

The Constitution says that the subject "of the bill" shall be "clearly expressed" in its title. No liberality of construction or breadth of interpretation could bring the subject of this bill within the natural meaning and scope of the words of its title. The only effect of the enacting terms of the bill was to exempt certain contracts—which were insurance contracts— by miscalling them, from the burden imposed upon

that business by the policy of the State. The bill did not seek in any wise to alter the intrinsic character or legal efficacy of such contracts. It contemplated that their full obligations should remain unchanged. Its only purpose was to declare that the "making" of them "shall not constitute insurance business." It is incontrovertible that it was the aim of the act not to abolish insurance business, but to enable certain persons to carry it on free from the supervision of that department of government and released from application of the general statutes which are designed to enforce and secure for the benefit of the people contracts of insurance made with them against loss to their property by fire or otherwise.

If the constitutional requirement that the title to any bill, other than appropriation bills, shall "clearly express" the one subject with which its enacting clause proposes to deal, can be contravened, then in our judgment that has been done in this case. We therefore, conclude that the Act of 1911 (Laws 1911, p. 301) now under review, was foisted upon the Legislature and adopted by it in the face of the Constitution and hence did not become a law of this State.

### III.

The same conclusion necessarily follows when the act under review is considered in relation to the limitation of the power of the Legislature to enact special laws of a particular kind. The Constitution deals with this subject in article 4, section 53, and subsequent paragraphs including, to-wit: " (33) Nor shall the General Assembly indirectly enact such special or local law by the partial repeal of a general law." From the terms of the act of the Legislature and by the admitted facts it appears that the beneficiaries are to be associations made up of the particular individuals, firms or corporations which shall make

*Partial Repeal of General Law: Class Legislation.*

the forms of contracts of insurance hereinbefore described, and the benefits of the bill are restricted to the special members of this particular association. The parties to all other forms of insurance contracts are denied the special exemption from the laws regulating that business which is accorded to the beneficiaries of the present bill, and this dicrimination is effected by the exact method prohibited by the Constitution, in this, that the bill under review, if valid, would amount to "the partial repeal of a general law," and thereby, "indirectly" enact a special law for the benefit of the special contract makers mentioned in the bill. That the Legislature cannot in this way violate the prohibition of the Constitution against the enactment of special laws, has been repeatedly held. [Henderson v. Koenig, 168 Mo. l. c. 371; State ex inf. v. Ins. Co., 150 Mo. l. c. 135; In re Flukes, 157 Mo. l. c. 132.]

In conformity with these views the writ hereinbefore granted by us is quashed. All concur, except *Woodson, J.,* who dissents as to paragraph one and concurs in paragraphs two and three and in result, and excepting *Lamm, C. J.,* and *Brown, J.,* who concur in everything except what is said in approval of the Henderson case.