GUSTAVE W. PHILLIPS, Respondent, v. WEST-
ERN UNION TELEGRAPH COMPANY, Appellant.

St. Louis Court of Appeals.   Argued and Submitted March 8, 1916.
Opinion Filed April 4, 1916.

1. MASTER AND SERVANT: Injury of Third Person by Servant:
Course of Employment: Sufficiency of Evidence. In an action for
personal injuries to a woman who was struck and knocked down by
a running boy, evidence *held* sufficient to warrant an inference by
the jury that the boy wasemployed by defendant telegraph company
as a messenger, and that, at the time of the accident, he was re-
turning from delivering a message for defendant, and was in the
course of his employment, although, a short time before, he had
deviated from his proper route to snatch a paper from a newsboy.

2. ————: ————: Proof of Relationship. In such a case, the
fact that the boy wore the uniform of defendant company was suf-
ficient to establish that he was in its employ.

3. TELEGRAPHS AND TELEPHONES: Master and Servant: In-
jury of Third Person by Messenger: Liability of Company. A
telegraph company is liable for damages caused by its messenger
boy running into a woman while he was returning to the company's
office after the delivery of a message.

4. EVIDENCE: Presumptions: Failure to Produce Testimony. In
an action for personal injuries to a woman who was struck and
knocked down by a running boy, where the evidence showed that
the boy was employed by defendant telegraph company as a mes-
senger and that, at the time of the accident, he was returning to
defendant's office after having delivered a message for it, and that
he was carrying an envelope similar to those in which defend-
ant's messages were delivered, the jury had the right to infer
from defendant's failure to introduce evidence tending to show
that the boy was not then engaged in the discharge of his duties,
that it could not do so because such was not the fact.

Appeal   from   St.   Louis   City   Circuit   Court.—*Hon.
James E. Withrow*, Judge.

AFFIRMED.

*Franklin Ferriss* and *Henry T. Ferris* for appel-
lant.

There was no evidence that at the time of the colli-
sion the defendant Kenzell was engaged in the perfor-

mance of any duties as an employee of the Telegraph Company, or that the alleged negligence was in respect to any act or deed on his part required by or incident to his employment, if any. Hillsdorf v. City, 45 Mo 94; Walker v. Railroad, 121 Mo. 575; Farber v. Railroad, 32 Mo. App. 378-381; Hartman v. Muehlbach, 64 Mo. App. 566; Collette v. Rebori, 107 Mo. App. 711, 720; Grattan v. Suedemeyer, 144 Mo. App. 719, 723; Slater v. Thresher Co., 5 L. R. A. (N. S.) 598; Geraty v. Ice Co., 16 App. Div. (N. Y.) 177; Railroad v. Harvey, 144 Fed. 806; Guille v. Campbell, 49 Alt. 938. (2) Under the facts shown by the plaintiff's evidence, the doctrine of *respondent superior* is not applicable. Kipp v. Oyster, 133 Mo. App. 711; Cases, supra.

*Jones, Hocker, Sullivan & Angert* and *Wm. H. McClarin,* for respondent.

(1) The evidence was sufficient to make out a prima-facie case that the defendant Kenzell was in the employ of the defendant and that at the time of the accident was engaged in and about its business as its servant. Fleishman v. Fuel Co., 148 Mo. App. 117; Long v. Nute, 123 Mo. App. 209; Hays v. Logan, 180 Mo. App. 237; O'Malley v. Construction Co., 255 Mo. 386; Curley v. Electric Vehicle Co., 68 App. Div. (N. Y.) 18, 21; Seaman v. Koehler, 122 N. Y. 646; Wylde v. Railroad, 53 N. Y. 156; Pearlstein v. Express Co., 177 Mass. 530; Tuomey v. Fogart Co., 22 N. Y. Sup. 930; 6 Lebatt, pp. 6868, 6859-60, 6879-81, 6886-89. (2) Kenzell's negligence having been committed in the course of his performance of his duties, was the negligence of the master. Bryan v. King, 211 Mass. 543; Garretson v. Duenckel, 50 Mo. 104; Meade v. Railroad, 68 Mo. App. 92; Brill v. Eddy, 115 Mo. 596; Voegeli v. Marble Co., 49 Mo. App. 643; Shamp v. Lambert, 142 Mo. App. 573-5; Winfrey v. Lazarus, 148 Mo. App. 388; Bouilon v. Light Co., 148 Mo. App. 473; Redd v. Railroad, 161 Mo. App. 522; Moore v. Light Co., 163 Mo. App. 270-1-2-3; Sodderland v. Railroad, 102 Minn. 240; 6 Lebatt, pp. 6868, 6859,

6860. (3) Kenzell not having stopped in grabbing the paper mentioned in the evidence, but having grabbed it while on his way to defendant's office, had not deviated from his duties to the defendant; but if he had, inasmuch as he was continuing on to that office when he struck Mrs. Phillips, he had resumed and was engaged in the performance of his duties at the time he struck her. Vanneman v. Laundry Co., 106 Mo. App. 685, 592; Jones v. Wiegand, 134 App. Div. (N. W.) 644; Lovejoy v. Campbell, 16 S. D. 231; Weber v. Lackland, 66 Neb. 469; Ritchie v. Waller, 63 Conn. 155.

STATEMENT.—About seven o'clock, on the evening of December 28, 1912, plaintiff and his wife were standing at the southeast corner of Grand Avenue and Olive street, in the city of St. Louis, awaiting an opportunity to cross to the west side of Grand Avenue. Mrs. Phillips was standing on the east curb of Grand Avenue, a few feet south of Olive, one of her feet resting on the sidewalk, the other on the street some four inches below the level of the sidewalk, when she was run into by Samuel Kenzell, a boy between sixteen and seventeen years of age, and knocked down with such violence that her right femur or hip bone, and also her right wrist, were broken.

It is charged in the petition that at the time he ran into Mrs. Phillips, Kenzell was a messenger boy in the employ of the Western Union Telegraph Company (hereinafter referred to for brevity as the Western Union), and at the time was engaged in the performance of his duties as such messenger boy, and that his act of running into and knocking Mrs. Phillips down was due to his careless, negligent and reckless conduct and done while in the line of his employment. Averring that the expense on account of hospital charges, etc., which plaintiff had paid, was in excess of $1000, and that he had incurred other liabilities on account of the attendance of physicians and surgeons in excess of $2500, and that he had been deprived of the society and services of his wife ever since the

accident, plaintiff avers that he has been damaged in
the sum of $7500, for which, with costs, he demands
judgment against the minor and the Western Union.

Each of the defendants, by separate answers,
denied all the allegations in the petition, save that the
Western Union admitted that it was engaged at the
time in the business of receiving, transmitting and
delivering telegrams.

The trial was before the court and a jury. With-
out setting it out in detail, it is sufficient to say that
there was evidence tending to show that at the time of
the injury to Mrs. Phillips, the Western Union had
in its employ messenger boys who generally wore a
uniform consisting of a cap with the words "Western
Union" on it, and a blue coat with brass buttons, and
that at the time of the accident Kenzell wore such a cap
and coat. It was also in evidence that a messenger
boy of the name of Kenzell was carried on the payroll
of the company at the time. There was also evidence
tending to show that at the time of the happening of
the accident the Western Union had a branch office in
a drugstore situated on the southwest corner of Olive
and Grand, with entrances on both streets; that
Kenzell was on duty at that office as messenger; that
on the evening of the happening of the accident, Ken-
zell was rapidly walking or running west on Olive
Street and about the center of the south pavement of
that street, and when near the corner of Grand and
Olive saw a newsboy named Pennington, with whom he
was acquainted, standing about on the north curb of
Olive street, on the south side of the street and near
the corner of Grand Avenue, with a bundle of news-
papers under his arm. Running along and swerving
toward Pennington, Kenzell grabbed a paper from
under Pennington's arm and carrying it in his left
hand continued running rapidly toward Grand Avenue,
looking back over his shoulder toward Pennington.
Mrs. Phillips, as stated, was standing on the west
curb of Grand, a few feet south of Olive, and a few
feet south and west of Pennington, so that Kenzell,

who had turned off slightly from his direct course to grab the paper from Pennington, then ran along Olive toward the southwest, and so running ran into Mrs. Phillips and knocked her down. He then proceeded across Olive street and entered the drugstore in which the branch office of the Western Union was located. Directly after the accident he was found in that office and identified as the boy who had knocked Mrs. Phillips down. Two or more witnesses testified that at that time they saw an envelope in the right hand of Kenzell, which they recognized as the ordinary envelope used by the Western Union for the delivery of messages.

Beyond the testimony as to the extent of the injuries received by Mrs. Phillips, which are said to be permanent, disabling her from performance of her wifely household duties, and the expense to which plaintiff had been put, which was heavy, this is substantially the testimony for plaintiff, except that a statement said to have been made by Kenzell was read in evidence, but admitted solely as against him, and not now relevant on this appeal.

The only evidence introduced by defendant was a diagram of the *locus in quo* and some testimony tending to contradict statements by plaintiff as to his loss of earnings in attending upon his wife, and as to the circumstances under which he had left the service of various companies by which he had been employed.

At the conclusion of the testimony for plaintiff and again at the conclusion of all testimony in the case, defendant Western Union Telegraph Company demurred or, more accurately, asked instructions in the nature of demurrers, which the court refused.

The court gave three instructions at the instance of defendants, refusing one asked as to the measure of damages. We will refer to the pertinent instructions hereafter.

There was a verdict in favor of plaintiff and against both defendants in the sum of $2000. The

Western Union Telegraph Company, filing its motion for a new trial and in arrest of judgment, and excepting to the action of the court in overruling these motions, has alone appealed.

REYNOLDS, P. J. (after stating the facts).—The assignment of error made before us is in permitting the case to go to the jury and in allowing the verdict to stand.

Under this assignment it is contended that there was no evidence that at the time of the collision defendant Kenzell was engaged in the performance of any duties as an employee of the Western Union or that the alleged negligence was in respect to any act or deed on his part required by or incident to his employment, if any, and that by the facts shown by plaintiff's evidence, the doctrine of *respondeat superior* is not applicable.

It is hardly denied by the learned counsel for appellant that Kenzell was, at the time of the happening of the accident, a messenger boy in the employ of appellant, and it may be added that the evidence tended to show that at the time he was so employed at the branch office of the appellant located in the drugstore. The evidence also was of such a character as to warrant the jury to infer that at the time he, Kenzell, was on his way to that office and that he had in his hand an envelope identified as the kind used by appellant for the delivery or carrying of messages. It is true that one of the witnesses who testified that he recognized the envelope as a Western Union envelope used for messages received or transmitted by that company, admitted that he could not read, but he very positively testified that he was familiar with the appearance of the envelope used by the Western Union and that he recognized the one then carried by Kenzell as such an envelope.

The real point of contention is, whether, at the time, Kenzell was in the discharge of the duties of his employment as messenger.

It must be admitted that the evidence as to this cannot be said to be in itself positive. The question for us, as an appellate court, to determine, however, is whether it was of such a character as warranted the jury, in consideration of it and of all the other facts and circumstances in evidence, to draw the inference that at the time Kenzell was actually in the discharge of the duties of his employment; if he was, it can hardly be doubted that the appellant, Western Union, is liable.

The question, not only as to his employment, but as to whether at the time and place Kenzell was performing the usual duties of a messenger boy for appellant, such as delivering messages and returning to the office of appellant from the delivery or attempted delivery of messages, was distinctly placed before the jury, not only by the instructions asked and given at the instance of appellant but by those given at the instance of respondent. Thus, at the instance of respondent, the court told the jury that if they found that on the day named Mrs. Phillips, the wife of plaintiff, was standing on the east side of Grand avenue, near its intersection with Olive street, and while so standing at that place, the defendant Kenzell, in a careless, negligent and violent manner ran into and collided with her, and that as a direct result thereof plaintiff's wife was knocked into the street and injured, and the plaintiff has suffered loss thereby, then plaintiff is entitled to recover against the defendant Samuel Kenzell. This instruction continues: "If the jury also finds from the evidence that at the time of said collision, the defendant Samuel Kenzell was in the employ of the defendant Western Union Telegraph Company as a messenger boy, and that at the time of said collision he was engaged in and about the performance of his duties as such messenger in returning from delivering a telegram, then the jury should also find in favor of the plaintiff and against the defendant Western Union Telegraph Company."

In another instruction, also given at the instance of plaintiff, the court directed the jury that as essential to recovery against both defendants, they must find from the evidence and circumstances given in evidence, that at the time and place of the accident ''Samuel Kenzell was performing for defendant Western Union Telegraph Company, the usual duties of a messenger boy, such as delivering messages and returning to the Western Union office from the delivery or attempted delivery of messages.''

At the instance of appellant the court instructed the jury, that plaintiff was not entitled to a verdict against the Western Union Telegraph Company ''merely upon proof that defendant Kenzell was a messenger boy in its employ when the accident occured, but plaintiff must further prove, by the greater weight of the evidence, that Kenzell was actually engaged in the performance of his duties at the time of the collision, and that the injuries to Mrs. Phillips were caused by Kenzell's negligence in or about the performance of his said duties.''

At the instance of appellant the court further instructed the jury that the fact, if it be a fact, that Kenzell was a messenger boy in the employ of the Western Union at the time of the accident ''does not of itself warrant or support the finding that he was actually performing his duties as such messenger boy at the time of the accident, but such finding can be based—if at all—upon independent evidence to that effect.''

So that beyond all controversy the issue was distinctly presented to the jury at the instance of appellant and respondent as to whether at the time of the accident the boy Kenzell was actually engaged in the performance of his duties as messenger boy for the Western Union.

The question is, did the evidence warrant these instructions.

It is strenuously argued by learned counsel for appellant that the deviation by Kenzell from his direct

194 M. A.—30

route along Olive street to the other side of the street to snatch the paper from the hands of the newsboy standing there, a friend and acquaintance of his, was such a deviation from the route and course which Kenzell should have pursued in returning to the office of appellant, and an act not in the line of his duty under his employment by the Western Union but for his own purposes, that the Western Union cannot be held responsible for the consequences of that deviation. As covering this point, the court, at the instance of respondent, added to the second instruction above given this: That they might find that Kenzell was then in the discharge of his duties as messenger notwithstanding the jury might find "that shortly prior to the collision Samuel Kenzell may have grabbed, for his own use, a newspaper from a newsboy, and was running with the same in his hand."

At the instance of appellant the court further told the jury that even if they should find and believe that Kenzell was a messenger boy and was engaged in his duties on the evening of the accident, "yet if you further find that he turned aside temporarily from the performance of his duties as messenger boy and undertook to get a newspaper solely for his own pleasure and purposes from the newsboy at Grand and Olive streets, and that his collision with Mrs. Phillips occurred while he was trying to get away with said newspaper against the consent of the newsboy, and not as the result of any act within the line of his duties as messenger boy, then the Telegraph Company is not liable for the results of said collision and your verdict will be in favor of said Telegraph Company."

These instructions clearly submitted the character of this so-called diversion to the jury as a question of fact. Properly so, for we cannot determine it as one of law. Admitting the deviation from his usual course and for the purpose of attending to a purely personal matter, the evidence is clear, that having accomplished that purpose, Kenzell resumed his course, veering

somewhat from a direct line for the entrance to the branch office of the western Union on the west side of Olive street, and that it was while he was pursuing this course and returning to the office that he ran into Mrs. Phillips. We hold that point as to deviation from his direct course by Kenzell for his own purposes, so strenuously made by printed argument and brief and in the argument before the court, as we are advised, is not tenable.

As before said, we do not think it can be seriously contended, we do not in fact understand that it is seriously contended, that at the time of the accident Kenzell was not in the employ of the appellant as messenger boy. His uniform and the letters on his cap would be sufficient, under the authority of our holding in the case of Fleishman v. Polar Wave Ice & fuel Co., 148 Mo. App. 117, 127 S. W. 660, to establish that. Learned counsel for appellant challenges our decision in this Fleishman case as not in line with authority and refers to it as having been criticised by a very able text-writer. [See 6 Labatt's Master & Servant (2 Ed.), note 4, sec. 2281a, page 6887.] As we understand the criticism of this decision by the text-writer, it goes more to that part of it which holds that it could be inferred, from the fact that a wagon belonged to the Polar Wave Ice & Fuel Company and was in charge of its servants, that they were acting in the course of their employment at the time of the accident, than to the identification of the wagon as belonging to the Polar Wave Ice & Fuel Company. It may be said with reference to the Fleishman case, that in Wiedeman v. St. Louis Taxicab Co., 182 Mo. App. 523, 165 S. W. 1106, and which was written for our court by former Judge GOODE, that in an opinion by Judge ALLEN, who was not a member of our court at the time of the decision in the Fleishman case, the law then announced was distinctly recognized and applied. We see no reason to now depart from it, certainly not in so far as the identification of Kenzell as being in the employ of the appellant is concerned.

It is argued by the very learned counsel for appellant that a human being, even though an employee, is not owned by his employer, and his every movement is not under the exclusive control of his employer, and it is contended that the testimony as to the Western Union envelope being in his hand at the time of the accident is too weak and too much discredited and too inconclusive to be given any effect; that in every case in which the name of the defendant has been given special significance, the injury was caused by a wagon or a truck or a car, or some instrumentality of that sort, and that there the name was regarded as some evidence of ownership, but that this doctrine has never been extended to such a case as the one before us and cannot be logically extended. Hence it is argued that the plaintiff has totally failed to make out a prima-facie case that Kenzell was performing his duty as an employee of the Telegraph Company when the collision occurred.

We think that the point of this argument is conclusively covered by a decision of the Supreme Judicial Court of Massachusetts in Ryan v. Keane et al., 211 Mass 543. In that case Mr. Justice DeCourcey, who wrote the opinion, after saying that there was no dispute but that one Boylan was an employee of defendants, and that he had run into and knocked down the plaintiff, who brought his action against defendants, Boylan's employers, for assault and negligence, has said (l. c. 544):

"As to the manner in which the two men came in contact the jury presumably believed the plaintiff's story, which was that he was crossing the yard toward the wagon which he had hired, when Boylan came along in a hurry, called out 'Get out of my way,' and immediately afterwards jostled the plaintiff or pushed him aside, when he had ample unobstructed space in which to pass. On these facts the plaintiff could recover under his count for an assault, or under that alleging negligence. That Boylan was in the employ of the defendants at the time of the accident was admitted by the defendant Keane and by Boylan, and is

apparent from the uncontradicted testimony. He had been sent by his employer to get the wagon, had helped the driver to hitch in the horse, and was hurrying back in a direct course from the wagon yard to the stable in order to resume his other routine duties as stableman. Although he had completed one of his daily tasks he remained in the service of the defendants and subject to their directions; and the relation of employer and employee, with its accompanying legal rights and obligations, continued while the employee was going from one to another portion of his day's work . . . The jury were warranted in finding that Boylan was acting within the scope of his employment at the time when he ran into the plaintiff. Probably this would not be questioned if he were driving the horse at the time and drove the wagon against the plaintiff. In the act of returning to the stable he was doing what he was ordered to do, and his purpose was to perform the work of his employer for which he was engaged. He was none the less acting in the course of his employment because his method of performing his duty was careless; and if in hurrying to do his work at a busy hour in the morning he carelessly or wilfully jostled against and injured the plaintiff, the defendants are liable for his act.''

It further appears to us that the principle here announced is as applicable to the messenger boy running on his own legs as if he had been riding a bicycle, or a horse, or driving a wagon.

Learned counsel for respondent make the point that the fact that defendant offered no evidence whatever as to the matter of employment of Kenzell, or the business in which he was at the time engaged in, in itself raises the presumption that the boy was about the business of the master. For this proposition counsel refer us to a decision of our court in Long v. Nute, 123 Mo. App. 204, 100 S. W. 511. In that case our court said, (l. c. 209) treating of an accident brought about by the carelessness, as it is alleged, of a chauffeur said to be at the time in the employ and on the business of the defendant, that if the chauffeur was

using the automobile surreptitiously, the fact that he was so using it was peculiarly within the knowledge of defendant.

"No effort was made to procure the evidence of the chauffeur and defendant did not testify that the chauffeur was using the automobile without authority. The failure of defendant to testify that the chauffeur was using the automobile for his own ends and without authority, and his failure to procure the evidence of the chauffeur, raises the presumption that the latter was about the master's business at the time of the accident and was in possession of the automobile by his consent. [Baldwin v. Whitcomb, 71 Mo. 651.] Where a servant, who is employed for the special purpose of operating an automobile for the master, is found operating it in the usual manner such machines are operated, the presumption naturally arises that he is running the machine in the master's service. If he is not so running it, this fact is peculiarly within the knowledge of the master, and the burden is on him to overthrow this presumption by evidence which the law presumes he is in possession of."

In McClanahan v. St. Louis & San Francisco R. R. Co., 147 Mo. App. 386, 126 S. W. 535, we held to the like effect (l. c. 413), illustrating the rule and citing in support of it 1 Starkie on Evidence, 6 Am. Ed. (1837), p. 54, as the general rule, that "the conduct of a party in omitting to produce that evidence, in elucidation of the subject-matter in dispute, which is within his power, and which rests peculiarly within his own knowledge, frequently affords occasion for presumptions against him; since it raises a strong suspicion that such evidence if adduced would operate to his prejudice." We there cite many other authorities in support of this rule, and think what is held in these cases is applicable here.

It is true that plaintiff must make out his case by a preponderance of the evidence, but it is also true that it is within the province of the jury to draw from the facts and circumstances in evidence such conclusions as those facts and circumstances warrant; such as

legitimately follow from them; not meaning that they are to indulge in guesswork and mere supposition, but that they may act on such inferences as can naturally be drawn from the facts and circumstances in evidence. The Western Union Telegraph Company, a public utility, is so much in the use and eye and knowledge of all our people, that we may assume that the jury will apply their knowledge of the usual course of business of this great instrumentality of public service when considering facts connected with that service. We all know that the Western Union Telegraph Company uses messengers for the delivery and taking up of messages, dispatches, telegrams. The jury, as men of ordinary intelligence, had a right to infer that when they had the testimony before them that Kenzell was a messenger boy in the employ of the Western Union, clothed in its usual uniform, going along the street in the direction of one of the branch offices of that company, carrying in his hand an envelope recognized as the envelope ordinarily used by the Western Union in the transaction of its business, that he was at the time in the discharge of the duties of his employment. It certainly behooved defendant, in the light of the evidence introduced by plaintiff, and it was within its power to meet this and to show, if that was the fact, that at the time of this accident this messenger boy was not engaged in the discharge of his duties as such at the time. That defendant did not attempt to do this, undoubtedly led the jury to conclude that the appellant was unable to do so.

We hold that there was substantial evidence in this case warranting its submission to the jury and to uphold the verdict of the jury.

Discovering no reversible error, the judgment of the circuit court should be and is affirmed. *Nortoni* and *Allen, JJ.,* concur.