Vernon H. HOERATH, Respondent,

v.

SLOAN'S MOVING & STORAGE COM-
PANY, a Corporation, Appellant.

No. 45479.

Supreme Court of Missouri,
Division No. 2.

Sept. 9, 1957.

Motion for Rehearing or to Transfer
to Court En Banc Denied
Oct. 14, 1957.

Chapman, Schwartz & Chapman, Adolph K. Schwartz, St. Louis, for appellant.

Lashly & Neun, Frank A. Neun, St. Louis, for respondents.

BOHLING, Commissioner.

Vernon H. Hoerath, the owner, instituted this action against Sloan's Moving & Storage Company, a corporation, engaged in business as a public warehouseman under Chapter 406 (statutory references are to RSMo 1949 and V.A.M.S.), on a contract of bailment for the reasonable value of household goods stored in defendant's public warehouse at 1167 Hodiamont Avenue, St. Louis, Missouri, which was destroyed by fire on the night of January 15, 1951. The cause was tried to the court, resulting in a finding defendant had failed to meet the burden of establishing "the existence of a lawful excuse for" failure to deliver plaintiff's goods upon demand under § 406.090, subd. 2, and plaintiff had judgment for $575.

■ Defendant's appeal was taken to this court by reason of its attack on the constitutionality of § 406.090, subd. 2, which issue was timely and duly raised in its answer and kept alive for review. This appeal was taken on February 17, 1956. Thereafter, on November 12, 1956 (motion for rehearing or to transfer overruled December 12, 1956), said § 406.090, subd. 2 was ruled constitutional and valid in Brown v. Sloan's Moving & Storage Co., Mo., 296 S.W.2d 20, 23 [2–4]. Broadly speaking, appeals lodged here on the ground a constitutional question is involved are transferred to the proper Court of Appeals where the constitutional question has been set at rest. City of Marshfield ex rel. and to Use of Hasten v. Brown, 337 Mo. 1136, 1138, 88 S.W.2d 339, 340 [3]; State ex rel. Simmons v. American Surety Co. of N. Y., Mo., 210 S.W. 428 [2, 3]. However, in instances wherein the constitutional question is open at the time the appeal is taken we have jurisdiction although the question be determined in another case pending the appeal. McFall v. Barton-Mansfield Co., 333 Mo. 110, 61 S.W.2d 911, 912 [2]; Privitt v. St. Louis-S. F. R. Co., Mo., 300 S.W. 726, 727 [1]; Dickey v. Holmes, 208 Mo. 664, 106 S.W. 511, reviewing authority; 21 C. J.S. Courts § 404, p. 658.

Section 406.090, following provisions not material to the instant issue, provides in ¶ 2:

"In case the warehouseman refuses or fails to deliver the goods in compliance with a demand by the holder or depositor so accompanied, the burden shall be upon the warehouseman to establish the existence of a lawful excuse for such refusal."

Missouri adopted the Uniform Warehouse Receipts Act in 1911, the title of the Act reading: "An Act to make uniform the law of warehouse receipts." Laws 1911, p. 431.

The Missouri Constitution, Art. III, § 23, V.A.M.S. (as did Mo.Const.1875, Art. IV, § 28), provides: "No bill shall contain more than one subject which shall be clearly expressed in its title".

Defendant presents the instant issue in the identical language the issue was presented in the Brown case, supra (296 S.W. 2d 20, 23 [2–4]); that is, defendant contends that § 406.090, subd. 2 does not relate to warehouse receipts, but relates to the subject of "burden of proof," and, not being within the scope of the title of the act, contravenes Mo.Const., Art. III, § 23, supra. Defendant cites State ex inf. McKittrick v. Murphy, 347 Mo. 484, 148 S.W.2d 527, 532 (stating purposes of said Art. III, § 23); Berry v. Majestic Milling Co., 284 Mo. 182, 192, 223 S.W. 738, 740 (a title covering

regulation held not to embrace provisions prohibiting); State ex rel. Inter-Insurance Auxiliary v. Rebelle, 257 Mo. 529, 539, 165 S.W. 1084, 1087 (an act to define indemnity contracts held not to embrace exempting such contracts from the insurance law); Southard v. Short, 320 Mo. 932, 8 S.W.2d 903, 905 (a title covering descents and distributions of estates held not to embrace provisions authorizing suit by the mother to establish paternity of an illegitimate child); State ex rel. Barker v. Assurance Co. of America, 251 Mo. 278, 294, 158 S.W. 640, 646, 46 L.R.A.,N.S., 955 (an act to regulate insurance on property considered not to repeal the anti-trust laws); Williams Lumber & Mfg. Co. v. Ginsburg, 347 Mo. 119, 146 S.W.2d 604 [6, 7] (a title restricted to mechanic's liens against railroads held not to embrace mechanic's liens generally); State v. Sloan, 258 Mo. 305, 167 S.W. 500 (an act relating to herding by "non-residents" not broad enough to cover herding by residents).

We ruled in the Brown case, supra, 296 S.W.2d loc.cit. 23, 24 [2–4], after reviewing authorities: "In our case, the purpose of the proposed legislation as stated in the title was to make uniform the law of warehouse receipts. By such a title those interested, the public and the members of the legislature, must have been apprised that the proposed legislation treated with the legal rights and liabilities of the warehouseman and depositor. The term 'law' stated in the title was significant, and signified that the bill treated with the law with respect to such duties and liabilities, and the whole title was broad enough in our opinion to naturally and reasonably embrace within its purview not only the substantive law defining the rights and liabilities of warehouseman and depositor, but also the procedural law whereby such rights and liabilities are to be tried and determined."

█ But, defendant says that the Brown case was tried and submitted on two counts —one declaring on the bailment contract, as does the instant plaintiff's claim, and the other declaring on fraud and deceit, asking under the latter actual and punitive damages; that plaintiff Brown recovered actual and punitive damages under the fraud and deceit count, and the holding that § 406.090, subd. 2 was constitutional was not involved in the fraud and deceit count, but only in the bailment count and, hence, is dictum. The questioned provision appears to have been a part of the original Uniform Warehouse Receipts Act (3 Uniform Laws, Annotated, 18, § 8), enacted, as stated, in Missouri in 1911 (Laws 1911, p. 433, § 8). We conclude the quoted portion of the ruling in the Brown case, whether dictum or not, is good law and is to be followed. Consult also State v. King, Mo., 303 S.W.2d 930.

█ Defendant next contends it was entitled to a directed verdict because it sustained its burden of proof and plaintiff failed to prove negligence, citing the Missouri cases of American Brewing Co. v. Talbot, 1897, 141 Mo. 674, 681, 42 S.W. 679, 681, and Bowles v. Payne, Mo.App., 1923, 251 S.W. 101, 103 [2].

Defendant argues that plaintiff was not relieved of the burden of going forward with evidence of defendant's negligence after defendant shouldered its burden of proof. Defendant's cases, notwithstanding the Bowles case involved occurrences arising after our adoption of the Uniform Warehouse Receipts Act, apply the law in effect prior to the adoption of said Act. Defendant's cases, among others which also did not consider said Act, hold that a plaintiff declaring on the bailment makes a case by proof of the bailment and defendant's failure to return the property on demand, and that the burden of going forward with the evidence thereupon shifts to the defendant to establish prima facie an exoneration, whereupon the burden of the evidence shifts to plaintiff to establish defendant's liability, the burden of proof remaining with the plaintiff throughout. The logical effect of the enactment of § 406.-090, subd. 2 was to change the law by plac-

ing the burden of proving a lawful excuse for the failure to deliver the goods to the bailor upon the warehouseman, as held in Brown v. Sloan's Moving & Storage Co., Mo., 274 S.W.2d 310, 315 [3], and approved on second appeal at 296 S.W.2d loc. cit. 22 [1]. See Denning Warehouse Co. v. Widener, 10 Cir., 172 F.2d 910, 13 A.L.R.2d 669; 6 Am.Jur. 458, § 369; 8 C.J.S. Bailments § 50, p. 339. Where the evidence is oral, as here, the party having the burden of proof on a controverted issue of fact is not entitled to a directed verdict as his adversary is entitled to have the trier of the facts pass on the credibility of the witnesses and the weight of their testimony, even though the testimony be uncontradicted. Peterson v. Chicago & A. R. Co., 265 Mo. 462, 479(II), 178 S.W. 182, 187 [2, 3]; State ex rel. Strohfeld v. Cox, 325 Mo. 901, 908, 30 S.W.2d 462, 465 [5–7]; Cluck v. Abe, 328 Mo. 81, 84, 40 S.W.2d 558 [2]. Clearly, defendant's authorities fall short of establishing error on this issue.

Plaintiff established his storage of the household goods with defendant, his payment of the charges, and defendant's failure or refusal to redeliver upon demand. This made plaintiff's pleaded prima facie case.

The warehouse, used to store household goods, was a two-story, no basement, brick building, 200 by 70 feet. The first floor was concrete with a metal covered ceiling. The second floor was of wood and was supported by wooden joists. The east side and the south side had two entrances each; a small door for customers and a large truck entrance door. A dock for loading and unloading trucks and a large wide stairway for moving furniture to and from the second floor was near the center of the building. A large coal fired furnace, about the center and near the north wall, and two electric heaters were used for heating. The furnace heated approximately half of the first floor. There were electric wires and outlets for lights all over the building. Partially loaded trucks were sometimes left in the building over night. The building had partitions, but we understand the

furnace and the area where trucks were stored was not partitioned off. The building was old, had no automatic sprinkler system or fire detection system or night watchman.

Defendant adduced testimony to the effect that the warehouse was kept free from accumulations of rubbish, paper, and excelsior, which were cleaned up and removed to a shed some distance from the building daily. No smoking was permitted. A sprinkler system was not recommended for warehouses storing household goods because water damage often exceeded the fire damage, and a night watchman was not recommended because of the pilferage hazard.

James Graham, who delivered packages for defendant, testified he returned to the warehouse about 5:30 p. m. January 15, 1951. Mr. Durfey, Mrs. Durfey and Mrs. Coppersmith were there. He was only in the portion formerly partitioned off for a store and stated it had been cleaned up. He disconnected one and Mr. Durfey disconnected the other electric heater. He had no occasion to check the furnace. The four left together. He locked the small south door, stating the other door had been taken care of.

Edwin Dieckgrafe, manager of the warehouse, and Richard Coppersmith, who checked the goods in and out, were to see that the building was kept clean. A colored porter, working under Dieckgrafe and Coppersmith, was supposed to do the actual work. Dieckgrafe left the warehouse about 5:00 p. m. the day of the fire. He stated everything had been swept and the paper and other things had been taken to the shed; that Mr. Durfey and a few trucks with part loads were in the building; that they let the fire die out every night, and he closed the furnace off that evening; and that he checked the doors and windows, except the two entrances on the side; and they were locked. Coppersmith testified they knocked off fifteen to twenty minutes early every night to sweep and roll up the paper, and the porter would carry it out. However,

on the day of the fire he was sent away from the building on another job about 7:30 a. m. and never returned to the building that day.

The porter did not testify.

January 15, 1951, was a very cold day. Mrs. Coppersmith, who lived in the first house south of the building, discovered the fire about midnight. Upon failing to reach the fire department over the telephone, the alarm was given from a fire alarm box on the corner. Mr. Coppersmith stated the fire appeared to be in the office on the first floor. The whole of the first floor was not then on fire. Captain William Ulrich of the fire department testified that it would take about three minutes for him to reach the fire, and when he arrived the fire was all over the first floor and had reached the second floor. A large portion of the second floor collapsed, and there was testimony this was over the furnace and where the trucks were stored.

The cause of the fire was never determined. The defendant's evidence did not compel a finding of no negligence on the part of defendant. The court was not required to believe defendant's evidence, particularly that the warehouse had been left in proper condition on the night of the fire; and the finding "that the defendant failed to sustain the burden of proof of the exercise of care based upon all the evidence" is approved. Section 510.310, subd. 4; Basman v. Frank, Mo., 250 S.W.2d 989, 992 [1].

■ Defendant also contends it was entitled to a directed verdict because the bailment contract relieved defendant of liability for fire (citing Wells v. Porter, 169 Mo. 252, 69 S.W. 282); and because plaintiff breached the contract by failing to carry insurance (citing Wells v. Thomas W. Garland, Inc., Mo.App., 39 S.W.2d 409; Buckey v. Indianhead Truck Line, Inc., 234 Minn. 379, 48 N.W.2d 534; Monsanto Chemical Co. v. American Bitumuls Co., Mo., 249 S.W.2d 428).

As stated, plaintiff declared upon the bailment contract. The storage order, signed by plaintiff, and the warehouse receipt issued by defendant provided: "The depositor assumes responsibility * * * for damage by * * * fire * * *. The depositor must carry own insurance against fire and other losses or damage to property stored."

We have read defendant's authorities. They are distinguishable on the facts in that, among other reasons, they were not ruled under the Uniform Warehouse Receipts Act

We said with respect to identical issues in Brown v. Sloan's Moving & Storage Co., Mo., 296 S.W.2d loc. cit. 25 [8, 9]: "We think defendant-appellant does not differentiate a fire due to no negligence of the warehouseman and one occasioned by the warehouseman's negligence. It is provided that a warehouseman may insert in a receipt, issued by him, 'any other terms and conditions', provided that such terms and conditions 'shall not * * * in any wise impair his obligation' to exercise the prescribed degree of care in the safekeeping of goods entrusted to him. § 406.040, RSMo 1949, V.A.M.S. [See also § 406.210.] It would seem that the provision in the storage order and warehouse receipt, insofar as the provision is construed as relieving the warehouseman-defendant from the exercise of the prescribed degree of care is invalid. The warehouseman may not avoid liability for his negligence. § 406.040, supra."

Defendant has advanced no reason for charting a different course in the instant case. The contentions are overruled.

■ Defendant makes the point: "This court has subsequently held that this fire was not caused by appellant's negligence." Defendant argues that from the verdict in the plaintiff's favor in Brown v. Sloan's Moving & Storage Co., Mo., 296 S.W.2d 20, on the fraud and deceit count that we held

this fire was not caused by defendant's negligence. The instant plaintiff was not a party to the Brown case and is not bound thereby. In addition, from the statements in the Brown opinion that said plaintiff could state a claim upon the bailment, the gist being negligence, without repudiating the claim on the theory of fraud and deceit, although entitled to but one recovery for actual damages; and that the proof supporting the claim stated in one of the counts did not disprove the other (loc. cit. 25 [10–12]), defendant's stated conclusion does not necessarily follow. Consult, among others, Phillips v. Western Union Tel. Co., 194 Mo.App. 458, 184 S.W. 958, an action by the husband for the loss of the society and services of his wife, and Phillips v. Western Union Tel. Co., 270 Mo. 676, 681, 195 S.W. 711, 712, an action by the wife for injuries arising out of the same occurrence.

■ The trial court applied the limitation of liability of $50 per item contained in the bailment contract and awarded plaintiff judgment for $575, but stated among its findings that the property had a reasonable value of $950. Plaintiff contends he is entitled to have judgment for $950. Plaintiff filed no motion for new trial and the issue is not before us. 42 V.A.M.S. Supreme Court Rules 3.23, rule; Thompson v. Child, 6 Mo. 162; Spotts v. Spotts, 331 Mo. 917, 55 S.W.2d 977, 980 [3]; McGinley v. St. Louis Pub. Serv. Co., Mo., 239 S.W.2d 321, 324 [8]. Consult Brown v. Sloan's Moving & Storage Co., Mo., 296 S.W.2d 20, 26.

The judgment is affirmed.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BOHLING, C., is adopted as the opinion of the court.

All concur.