Wilbur G. BROWN and Patricia Parker
Brown, Plaintiff-Appellants,

v.

SLOAN'S MOVING & STORAGE COM-
PANY, a Corporation, Defendant-
Respondent.

No. 44303.

Supreme Court of Missouri.

Division No. 1.

Dec. 13, 1954.

Motion for Rehearing or to Transfer to
Court en Banc Denied Jan. 10, 1955.

Jones, Hocker, Gladney & Grand, Harold
C. Gaebe, Jr., St. Louis, for appellants.

Sievers, Reagan & Schwartz, St. Louis,
for respondent.

VAN OSDOL, Commissioner.

Plaintiffs, Wilbur G. and Patricia Parker
Brown, instituted this action to recover
$19,665.20 alleged to have been the value
of personalty stored by them in the ware-
house of defendant, Sloan's Moving &
Storage Company, which warehouse, sit-
uate at 1167–69 Hodiamont Avenue in St.
Louis, was destroyed by fire January 15,
1951. At the conclusion of plaintiffs' case
the trial court directed a verdict and en-

tered judgment for defendant. Plaintiffs have appealed.

In this case wherein plaintiffs-depositors' property was destroyed by fire while stored in defendant-warehouseman's warehouse, we have the question, among others, of the effect of the Uniform Warehouse Receipts Act, Section 406.010 et seq. RS Mo 1949, V.A.M.S., particularly Sections 406.090 and 406.210 thereof, upon the "burden of proof" on the issue of the warehouseman's negligence.

Plaintiffs had filed a petition in four counts, but voluntarily dismissed their Count II.

By Count I, plaintiffs alleged the delivery of their (household) goods to defendant for storage and their receipt of defendant's warehouse receipt. Plaintiffs also alleged their payment for the storage and their performance of the bailment contract in all respects. They also alleged they had made repeated demands, and that defendant had failed and refused to deliver the property or its reasonable value.

In Count III plaintiffs incorporated those allegations of the paragraphs of Count I pertaining to the contract of bailment, its performance by plaintiffs, and their demand and defendant's failure or refusal to deliver the property, and further alleged as follows,

"2. On or about June 20, 1950, defendant by and through its agents, represented by means of a printed statement and photograph of a building on its business letterhead that it maintained a 'New, Modern Storage Warehouse.' Said defendant also represented by means of advertisements in the Greater St. Louis Telephone Directory for November, 1949, that it maintained 'Bonded Storage, Fireproof, Sprinkled Warehouse, Low Insurance Rates'; * * *.

"3. Plaintiffs in reliance upon the above mentioned representations of defendant entered into a contract of storage with said defendant and delivered up their goods and furnishings to defendant under the assumption that said goods and furnishings would be stored in a building warehouse that fit the description of said representations.

"4. Defendant with present knowledge of the existence of another warehouse located at 1167–69 Hodiamont Avenue, * * * which did not correspond to said representations nevertheless allowed plaintiffs herein to remain uninformed as to that fact and as to defendant's then present intention not to store said goods and furnishings in accordance with its representations but rather to store the goods in the warehouse at 1167–69 Hodiamont Avenue, * * * which in fact was not a new modern fireproof and sprinkled warehouse and which in fact did burn causing the loss of plaintiffs' goods and furnishings herein-above mentioned. * * * *"

By their Count IV plaintiffs again incorporated the paragraphs of Count I stating the bailment contract, its performance by plaintiff, and defendant's failure and refusal to return the property on plaintiffs' demand, and further alleged as follows,

"2. On or about January 15, 1951, plaintiffs' goods and furnishings were destroyed by fire while stored in defendant's warehouse located at 1167–69 Hodiamont Avenue, * * * said destruction by fire being the direct and proximate result of negligence and carelessness on the part of defendant in failing to exercise its duty of ordinary care in the following respects, to-wit:

"(a) Defendant stored Plaintiffs' goods and furnishings at its warehouse at 1167–69 Hodiamont Avenue, * * * when said warehouse was a building unsuited for the safe storage of said goods in that said building was of old construction with a wooden second floor and said building was without adequate fire walls, fire doors and fire-

proof partitions to prevent the rapid spread of fire throughout the said building; said building warehouse was also without adequate fire protection in that it had no sprinkler system or automatic fire warning devices.

"(b) Defendant permitted the storage of automobiles and trucks with attendant inflamable materials in said building warehouse without adequate fire protection and in violation of the Revised Code of the City of St. Louis, Building Code, Section 489, which provides that separation walls and fire doors of specified construction be maintained between an area used as a public garage and an area of normal hazard.

"(c) Defendant failed and neglected to provide a watchman in and around said warehouse to prevent and discover the outbreak of fire.

"(d) Defendant failed and neglected to provide adequate fire protection so that said fire could have been discovered and extinguished before it had caused the complete loss of said building warehouse and plaintiffs' goods and furnishings stored therein. * * "

Answering Count I of the petition, defendant alleged inter alia that plaintiffs' goods were destroyed and damaged in defendant's Hodiamont Avenue warehouse by fire of unknown origin; and defendant denied generally the allegations of misrepresentation and negligence respectively stated in plaintiffs' Counts III and IV.

Plaintiffs introduced evidence tending to show they had stored their property (it seems the property actually belonged to plaintiff wife) with defendant pursuant to a storage order dated June 20, 1950, signed for plaintiff wife, "per E. Nebbitt," the storage order reciting that the property was to be stored at defendant's warehouse at 1167 Hodiamont. Defendant's warehouse receipt was delivered to plaintiffs by enclosure in defendant's letter, July 12th. Plaintiffs fully paid all storage and other charges made by defendant in connection with the property stored. January 18, 1951, plaintiffs received defendant's letter of January 16th notifying them that defendant's warehouse on Hodiamont had been destroyed by fire about midnight, January 15, 1951. Defendant conceded that plaintiffs had demanded delivery of the property or its value and that defendant had denied all liability. There can be no question but that plaintiffs' property was destroyed by fire, although there was evidence that a few articles of more or less trivial value were salvaged.

As stated, defendant had alleged the fire was of unknown origin, and plaintiff did not and apparently could not introduce or proffer evidence tending to prove the origin of the fire. The evidence offered by plaintiffs tending to support their allegations of negligence was rejected by the trial court. Defendant did not introduce evidence tending to show the circumstances in which plaintiffs' property was destroyed or any evidence on which it could have been reasonably found that no negligence of defendant was a proximate cause of the loss.

Attending the Contention of Error of the Trial Court in Directing a Verdict as to Counts I and IV

Under the Uniform Warehouse Receipts Act, which of the parties, plaintiffs or defendant, had the burden of proof as to the issue of negligence?

In so far as we have been able to ascertain, the St. Louis Court of Appeals has rendered the first decision in Missouri treating with the Uniform Warehouse Receipts Act with respect to the effect of the Act upon the burden of proving the warehouseman's negligence. Gutknecht v. Wagner Bros. Moving & Storage Co., Mo.App., 266 S.W.2d 19 (see also Fry v. Wagner Bros. Moving & Storage Co., Mo.App., 267 S.W.2d 359, and Cook v. Sloan's Moving & Storage Co., Mo.App., 267 S.W.2d 362). By an ably written opinion in the Gutknecht case, that Court decided that Sections 8 and 21 of the Act, respectively Sections 406.090 and 406.210, RSMo 1949,

V.A.M.S., 3 U.L.A. §§ 8 and 21, changed the common law rule as recognized in our Missouri cases, and that the burden of proof is now on defendant on the issue of a defendant-warehouseman's negligence vel non in those cases where a plaintiff's claim is based on the bailment contract; but that, where a plaintiff's action is on negligence, the Act does not affect our common law rule that the burden of proving a defendant-warehouseman's negligence is on a plaintiff-depositor. In expressing the opinion that the common law rule had not been changed by the Act (in those cases in which a claim is based on negligence) the St. Louis Court of Appeals relied principally on the case of Traders' Compress Co. v. Precure, 107 Okl. 191, 231 P. 516, 523. In that case—in a well-considered opinion —the Supreme Court of Oklahoma said, "We are not in accord with the views of those courts holding that where recovery is sought, based on the negligence of the warehouseman, the statute has changed the rule as to the burden of proof, for the reason that the statute under consideration deals only with the rights, duties, and liabilities of the parties under the contract of bailment as embodied in the warehouse receipt. The act does not deal with the burden of proof in actions sounding in tort, or with the law of negligence, and nowhere evinces an intention on the part of the Legislature to in any manner modify the rules at common law in cases founded on negligence." See now the Annotation 13 A.L.R.2d 681, at page 692, for other cases recognizing a distinction based on the forms of action with regard to the effect of the Act upon the burden of proof. But also examine George v. Bekins Van & Storage Co., 33 Cal.2d 834, 205 P.2d 1037, 1042, also cited in the Annotation, in which case it was said (the court having referred to the case of Wilson v. Crown Transfer & Storage Co., 201 Cal. 701, 258 P. 596) it is clear that in cases governed by the Act, the burden of proving that the goods were not lost because of negligence is on the defendant, "whether plaintiff frames his complaint on a negligence or a breach of contract theory."

In our consideration of the effect of the Act on the burden of proving the issue of defendant's negligence, we bear in mind the distinction between "the burden of going forward with the evidence" (or "the burden of evidence") in making out a prima facie case or in the prima facie meeting of a prima facie case, which burden of going forward with the evidence may shift during the progress of the introduction of evidence in the trial of a case, and "the burden of proof"—the risk of nonpersuasion—the burden of convincing the triers of the fact when the last word has been spoken in the trial of a case. McCloskey v. Koplar, 329 Mo. 527, 46 S.W.2d 557, 92 A.L.R. 641; Thayer's Treatise on Evidence, 353–389; Vol. IX, Wigmore on Evidence, 3d Ed., § 2485, p. 270, and § 2487, p. 278.

Plaintiffs in their Count I declared on the contract of bailment alleging performance on their part and their demand for and defendant's failure or refusal to return or deliver the property stored or its value. Since plaintiffs in Count I declared on the contract and defendant's failure to perform as stipulated, it would seem logical to say that defendant should be obliged to state as a complete exoneration and as an affirmative defense that the loss was not occasioned by the lack of negligence on its part and should have the burden of proof of its exercise of due care, that is, the burden of proving the loss was not due to any negligent act of commission or omission of defendant with respect to the property. Plaintiffs in their Count IV affirmatively declared on negligence. Ordinarily it would be said they had the burden of proof on the issue. Generally the burden of proof (as distinguished from going forward with the evidence) in any case rests on the party, plaintiff or defendant, who as determined by the pleadings or the nature of the case asserts the affirmative of an issue. While, as stated, the burden of going forward with the evidence may shift during the progress of the trial of a case, the burden of proof does not shift but remains with the party having the affirmative of an issue until the termination of the case. McCloskey v. Ko-

plar, supra; Clapper v. Lakin, 343 Mo. 710, 123 S.W.2d 27; Galloway v. Galloway, Mo. Sup., 169 S.W.2d 883; Vol. IX, Wigmore on Evidence, 3d Ed., § 2486, p. 274. However, in this State it has been consistently ruled, without any apparent regard for the technical forms of action, that a plaintiff-depositor has the burden of proving, where the property was lost by fire or water or theft, that the loss was due to the warehouseman's failure to exercise ordinary care and diligence in preserving the property. American Brewing Ass'n v. Talbot, 141 Mo. 674, 42 S.W. 679; Levi v. Missouri, K. & T. R. Co., 157 Mo.App. 536, 138 S.W. 699; McKeever v. Kramer, 203 Mo. App. 269, 218 S.W. 403; Rochette v. Terminal R. Ass'n of St. Louis, Mo.App., 225 S. W. 1019; Bowles v. Payne, Mo.App., 251 S.W. 101. This was no doubt because, in this kind of a case, *negligence* was considered the *"gist of the cause of action"* whether the form of the action was on the contract, or for conversion, or negligence—assumpsit, trover, or case. In Oliver Cadillac Co. v. Rosenberg, Mo.App., 179 S.W.2d 476, 480, it was said that bailments, except constructive bailments, "are bottomed on contract. Nevertheless, the gist of a cause of action of bailor against bailee is negligence, and the burden rests on the bailor to plead and prove negligence as the cause of the loss or injury, and this burden rests on the plaintiff to the end of the case." Levi v. Missouri, K. & T. R. Co., supra; McKeever v. Kramer, supra; Rochette v. Terminal R. Ass'n of St. Louis, supra.

In Rochette v. Terminal R. Ass'n of St. Louis, supra, the action in form was for conversion. It was said, "In cases of this sort, where the bailor sues the bailee for refusal to deliver goods under the contract of bailment, the gist of the cause is negligence. The plaintiff in such a case has the affirmative of the issue. However, plaintiff being at a disadvantage in obtaining information of the cause of the loss, the law considers that he makes out a prima facie case of negligence by proving the bailment and a failure on the part of the bailee to return the property on demand. Plaintiff so established a prima facie case, and it then be-

came the duty of defendant to either introduce evidence showing that the loss was occasioned by some act such as theft, fire, etc., which would prima facie establish an exoneration and require the plaintiff to take up the burden of showing negligence on the part of defendant, or the defendant may introduce evidence of ordinary care on its part, and show that the loss occurred through no fault or breach of duty on its part."

Although the McKeever, Rochette and Bowles cases were decided after the enactment of the Uniform Warehouse Receipts Act in Missouri in 1911, L.1911, p. 431, in none of them was the Act cited or referred to and considered.

Reaching now, arguendo, into the language quoted from the Rochette opinion, it is noted that it was said the law considers that a plaintiff has made out a prima facie case of negligence by proving the bailment and the failure of the bailee to return the property on demand. But, upon the introduction of evidence showing that the loss was occasioned by fire, theft, etc., exoneration is shown, but only *prima facie*; and so here it is observed the fact that the property was destroyed by fire, theft, etc., has not been considered as being, in itself, a complete exoneration or legal excuse and complete defense. Of course, a fire may or may not be due to a failure to exercise care. A defendant-warehouseman is not exonerated by the shown fact of a loss by fire if the loss occurred through breach of duty on his part. So the shown fact that plaintiffs' property was destroyed by fire of unknown origin does not, without more, demonstrate defendant's due care in regard to the property neither does the fact alone demonstrate a failure to exercise due care. (Here, it could be asserted it is apparent that, where the property has been destroyed or damaged, negligence was and *is* the very gist of the depositors' claim. See now Section 21 of the Act, Section 406.210, supra, 3 U.L.A. § 21.) But at this point in the progress of the proof, the defendant having shown plaintiffs' property had been destroyed by fire, under the common law rule plaintiff was obliged to shoulder the burden of going

forward with the evidence tending to destroy defendant's prima facie exoneration, that is, evidence tending to prove that negligence of defendant went into the cause of the loss, the burden of proof on the issue of negligence having been and having continued to be all the while on plaintiff. Now, if the fact that plaintiff, in the first instance, was at a disadvantage in obtaining information of the cause of the loss, and if because of this plaintiff could make out a prima facie case of negligence by proving the bailment and defendant's failure to return the property on demand, it could be urged that (the plaintiff having shown the facts of the bailment, his performance, and defendant's failure and refusal to deliver on plaintiff's demand or if such facts were conceded) plaintiffs' disadvantage and defendant's advantage in obtaining information as to the circumstances of the loss would be sound reason for imposing upon defendant the burdens of going forward with the evidence *and of ultimately establishing* that the loss was occasioned through no fault on his part.

■ Putting aside finally all discussion of the former common law rule relating to burden of proof in a case of this nature, and turning now to Section 8 of the Act, 3 U.L.A. § 8, Section 406.090, supra, we read, "In case the warehouseman refuses or fails to deliver the goods in compliance with a demand * * *, *the burden shall be upon the warehouseman to establish* the existence of a lawful excuse for such refusal." Turning further to Section 21 of the Act, Section 406.210, supra, 3 U.L.A. § 21, we read that a warehouseman "shall be liable for any loss or injury to the goods caused by his failure to exercise such care in regard to them as a reasonably careful owner of similar goods would exercise, but he shall not be liable, in the absence of an agreement to the contrary, for any loss or injury to the goods which could not have been avoided by the exercise of such care." Indeed, it seems clear to us the Act does treat with an issue of negligence in a case involving circumstances which may obtain in the course of the contractual (bailment) relationship of the parties. We

believe the plain language of the Act puts the burden of proof on the issue squarely upon defendant, who, because he had custody of the property and the control of the premises where the property was stored and destroyed, usually has the better means of ascertaining the facts and circumstances of the loss, knows the precautions he had taken to guard against it, and is therefore the better able to sustain the burden. We do not wish to assume the Act contemplates the burden of proof on the issue should be different in whatever pleadings raised, or if indeed it is raised by no pleading at all, in whatever technical form of action. We cannot believe but that the Act contemplates that (regardless of how the issue is raised or whether the issue is raised affirmatively or negatively) defendant has the burden of negativing his negligence and establishing complete exoneration or lawful excuse, that is, he has the burden of proving that he had exercised such care in regard to the property as a reasonably careful owner of similar property would use.

We are of the opinion the trial court should not have sustained the motion for a directed verdict as to Counts I and IV.

### Attending the Contention of Error of the Trial Court in Directing a Verdict for Defendant as to Count III

In support of their claim as stated in Count III, plaintiffs proffered into evidence defendant's "letterhead" including the words thereon, "New Modern Storage Warehouse"; and plaintiff's "Exhibit A", a page of the Classified Telephone Directory of Greater St. Louis, November 1949. The latter exhibit disclosed defendant's advertisement including a "cut" of defendant's 7-story building situate at 5619 Delmar. A legend, printed vertically on the reader's right, was as follows, "Fireproof Storage—Sprinkled Warehouse—Low Insurance Rates—Delmar 3500—Sloan's Moving & Storage Co."

■ Plaintiff wife testified that she, contemplating the necessity of storing plaintiffs' property, "looked in" the direc-

tory before she actually contacted the Sloan Company. However, the trial court excluded the "Exhibit A" on the stated ground that the statements "Fireproof Storage—Sprinkled Warehouse" referred only to the warehouse at 5619 Delmar. The trial court also refused plaintiffs' offer to prove that plaintiff wife acted in reliance upon the statements in the advertisement, "Fireproof Storage—Sprinkled Warehouse", and that she did not know that defendant had a warehouse other than that on Delmar. It is true that the "ad" containing statements "Fireproof Storage—Sprinkled Warehouse" did not expressly make the statements applicable to defendant's warehouse on Hodiamont; and it is true that the advertisement referred to "Warehouse" in the singular. But, if defendant had expressly and falsely represented the warehouse on Hodiamont to be fireproof and equipped with a sprinkler system we have no doubt that the representation would have been an adequate basis for a claim of fraud and deceit. And, sometimes fraud may be reasonably inferred from what was not said or from what was only partly said as well as from a representation shown to have been expressly made. Ash Grove Lime & Portland Cement Co. v. White, 361 Mo. 1111, 238 S.W.2d 368, and authorities therein cited. The advertisement did not disclose that defendant had a warehouse (or warehouses) on Hodiamont or elsewhere which was not fireproof. We think the wording of the advertisement might reasonably be understood as a representation that all of defendant's storage facilities were fireproof and were equipped with sprinkler systems. We believe it could be reasonably found that the advertisement was intended and designed to convey that impression to the public generally including plaintiffs. The intended design of the advertisement, in our view, was a jury question.

We are of the opinion the trial court erred in excluding the "Exhibit A", and in sustaining defendant's motion for a directed verdict thereby precluding plaintiffs' development of their case on their claim as stated in Count III.

The judgment should be reversed, and the cause remanded.

It is so ordered.

LOZIER and COIL, CC., concur.

PER CURIAM.

The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court.

All concur.