Patricia Parker BROWN (Plaintiff),
Respondent,

v.

SLOAN'S MOVING & STORAGE COMPANY,
a Corporation (Defendant), Appellant.

No. 45164.

Supreme Court of Missouri.

Division No. 1.

Nov. 12, 1956.

Motion for Rehearing or to Transfer to
Court en Banc Denied Dec. 12, 1956.

Chapman, Schwartz & Chapman, Adolph K. Schwartz, St. Louis, for appellant.

Jones, Hocker, Grand, Peper, Martin & Roudebush, Harold C. Gaebe, Jr., St. Louis, for respondent.

VAN OSDOL, Commissioner.

This action was originally instituted by Wilbur G. and Patricia Parker Brown to recover $19,665.20 alleged to have been the value of personalty (furniture and other household effects) stored in the warehouse of defendant, Sloan's Moving & Storage Company, which warehouse situated at 1167–69 Hodiamont Avenue in St. Louis was destroyed by fire January 15, 1951. At the conclusion of plaintiffs' evidence upon a former trial of the case, the trial court directed a verdict and entered judgment for defendant; and upon appeal to this court the trial court's judgment for defendant was reversed, and the case remanded. Brown v. Sloan's Moving & Storage Co., Mo.Sup., 274 S.W.2d 310. In reviewing the case upon the former appeal, we had the question, among others, of the effect of the Uniform Warehouse Receipts Act, § 406.-010 et seq., RSMo 1949, V.A.M.S., particularly §§ 406.090 and 406.210 thereof, on the "burden of proof" on the issue of the warehouseman's negligence.

Preceding the retrial of the case, Wilbur G. Brown was dropped as a party plaintiff, and the trial of the case proceeded with Patricia Parker Brown, the owner of the personalty stored, as the sole plaintiff. Upon the instant appeal we are concerned with Counts I and III of plaintiff's petition. In Count I plaintiff declared on the bailment and defendant's refusal to return the property on plaintiff's demand. In Count III plaintiff declared on fraud and deceit, and also prayed for punitive damages. The allegations of these two counts are set out in substance in this court's opinion rendered upon the former appeal. 274 S.W.2d at page 311. At the conclusion of the instant retrial, the trial court submitted the issues of Count I, by Instruction No. 2, and the issues of Count III, by Instruction No. 1. The trial court also gave Instruc-

tion No. 6 which we deem pivotal and decisive of some of the contentions raised herein. We, therefore, early in this opinion fully quote the instruction as follows:

"The Court instructs the jury that if you find for the plaintiff on either Instruction No. 1 or Instructions No. 2, or on both of said instructions, then you should assess plaintiff's actual damages in such sum as you may find will compensate her for the reasonable value of her household goods at the time they were destroyed, not, however, exceeding the sum of $19,665.50.

"You are further instructed that if you find for plaintiff under Instruction No. 1, and if you further find that said representation as set out in Instruction No. 1 was wilfully and maliciously made, if you so find, then you may assess such additional sum by way of punitive damages as you may see fit, if any, as will be a warning to defendant not to commit similar acts, not, however, to exceed the sum of $10,000.

"The court further instructs you that the word 'maliciously' as used in this instruction does not mean hatred, spite or ill-will, as commonly understood, but means a wrongful act intentionally done without just cause or excuse, and by the word 'wilfully' is meant intentionally and not by accident or mistake."

The case having been tried and the issues submitted, the jury returned a verdict for plaintiff assessing actual damages at $10,-000, and punitive damages at $5,000; and judgment for plaintiff was entered in the aggregate sum of $15,000. Defendant has appealed.

■ In the former review of the case, this court held that, regardless of the technical form of the action (whether in the nature of assumpsit, trover, or case) and regardless of however the issue of a warehouseman's negligence is raised, §§ 406.090 and 406.210, supra, impose upon the ware–

houseman-defendant the burden of ultimately establishing that a loss, although by fire, was not due to defendant's negligence. Although a depositor-plaintiff may declare upon the bailment and allege delivery of goods for storage; the receipt of the warehouseman-defendant's receipt; the payment of the storage charges; and plaintiff's presentation of the receipt and his demand for, and defendant's refusal to deliver the property, the warehouseman-defendant, having the duty to deliver, is not necessarily exonerated or excused from delivery by the mere fact that the goods have been destroyed by fire. The warehouseman-defendant, who is the better able to show the circumstances of the fire, must go further and establish to the reasonable satisfaction of the jury that the loss by fire occurred through no negligence on the warehouseman-defendant's part. So it is at this time the law in Missouri, in cases of bailments subject to the Uniform Warehouse Receipts Act, that although the plaintiff's claim arises out of a contractual relationship and plaintiff may declare as if upon the contract, the gist of plaintiff's action is negligence, and the burden of proof on the issue—negligence—is on the shoulder of the warehouseman-defendant to disprove his negligence because the Act puts it there. §§ 406.090 and 406.210, supra; Brown v. Sloan's Moving & Storage Co., supra; cases collated in the Annotation 13 A.L.R. 2d 681, at page 695; George v. Bekins Van & Storage Co., 33 Cal.2d 834, 205 P.2d 1037.

Upon this appeal the first contention raised by defendant-appellant is that the trial court erred in refusing to direct a verdict for defendant as to Count I. In support of the contention, it is initially asserted that §§ 406.090 and 406.210, supra, as held by this court to impose the burden of proof of nonnegligence upon the warehouseman, are unconstitutional and violative of Section 23 of Article III of the Constitution of Missouri, Const. § 23, Art. III, V.A.M.S., which provides that "no bill shall contain more than one subject which shall be clearly expressed in its title * * *."

The original bill, enacted into law by the 46th General Assembly, L.1911, p. 431 et seq., was entitled, "An Act to make uniform the law of warehouse receipts." It is said by defendant-appellant that the single subject matter of the title is "warehouse receipts," and that the last paragraph of § 406.090, supra, does not relate to warehouse receipts but relates to the subject of "burden of proof." On the other hand, plaintiff-respondent contends the title of the original bill was sufficient to include all of the subjects within it which naturally and reasonably relate to the "law of warehouse receipts"; and plaintiff-respondent, in developing her contention, says that the stated Section of the Constitution, in providing that "no bill shall contain more than one subject which shall be clearly expressed in its title," simply means that the title shall indicate in an unmistakable manner the general contents of the bill and that the constitutional provision, § 23, Art. III, does not require, nor was it intended that it should descend into particulars. It is sufficient if the title of the bill defines the nature of the proposed legislation and thus informs the reader as to its purpose. Plaintiff-respondent asserts that, the constitutional provision being thus understood, the tendency of the courts in numerous rulings is to construe it liberally in aid of well-directed legislative power. Plaintiff-respondent's interpretation of the constitutional provision is supported by the cited cases. State on Information of Dalton v. Land Clearance for Redevelopment Authority of Kansas City, Mo., 364 Mo. 974, 270 S.W.2d 44; Edwards v. Business Men's Assur. Co. of America, 350 Mo. 666, 168 S.W.2d 82; State ex rel. Missouri Pac. R. Co. v. Danuser, 319 Mo. 799, 6 S.W.2d 907; Coca-Cola Bottling Co. v. Mosby, 289 Mo. 462, 233 S.W. 446.

In the Edwards case [350 Mo. 666, 168 S.W.2d 92], the title to the bill was "'An Act to revise and amend the Insurance Laws of the State of Missouri.'" Section 63 of the bill treated with the "defense" of suicide. This court was of the

opinion that the title to the bill was indeed general, but it indicated the substantial purpose of the proposed legislation, and was sufficient to apprise the public and the members of the legislature of its purpose. Section 63 was an amendment to the existing insurance laws and was reasonably within the purview of the proposed legislation. 168 S.W.2d at page 93. In our case, the purpose of the proposed legislation as stated in the title was to make uniform the law of warehouse receipts. By such a title those interested, the public and the members of the legislature, must have been apprised that the proposed legislation treated with the legal rights and liabilities of the warehouseman and depositor. The term "law" stated in the title was significant, and signified that the bill treated with the law with respect to such duties and liabilities, and the whole title was broad enough in our opinion to naturally and reasonably embrace within its purview not only the substantive law defining the rights and liabilities of warehouseman and depositor, but also the procedural law whereby such rights and liabilities are to be tried and determined.

It is further asserted in support of defendant's first contention that defendant sustained its burden of proof and plaintiff failed to prove any negligence; and that the bailment contract relieved defendant of liability for fire. Appellant also makes the further contentions that the court erred in refusing to direct a verdict for defendant on Count III; erred in trying and jointly submitting Counts I and III; erred in failing to limit defendant's liability to $50 per item of the goods stored; erred in submitting to the jury the issue of punitive damages; and erred in receiving and accepting a general verdict which did not allocate damages between Counts I and III.

 Plaintiff introduced evidence tending to show the storage of her household goods with defendant; defendant's issuance of its warehouse receipt; plaintiff's payment of the charges for storage; and de-

fendant's failure or refusal to deliver upon plaintiff's demand for the return of the goods. This evidence made out plaintiff's prima facie case on her claim as stated in Count I.

Plaintiff also went forward with evidence tending to show that defendant's warehouse on Hodiamont was a two-story building with masonry walls, wooden joists and girders, and wooden posts; that a brick wall passed through the center of the building with no fire doors; that there were no fire detection or alarm devices and no sprinkler system; that no watchman was employed to watch the building and its contents during the nighttime; that the building was classified by the City (since 1946) as of "fourth-class construction," that is, "it's not a fireproof building," as distinguished from a "first-class" building, a so-called "fireproof building" constructed of "reinforced concrete, and metal sash with wired glass."

Defendant introduced evidence tending to show that the building was in good condition. There were "No Smoking" signs, and defendant's employees were instructed not to smoke in the building. A sprinkler system may damage goods stored as much as a fire. A watchman at nighttime may "pilfer" articles from the goods stored. During the interrogation of defendant's witnesses, evidence was developed that the Hodiamont building was partially heated with a stove, which was particularly described by defendant's president as a "hot air furnace with the jacket removed, just the castiron frame of the thing"; that the stairway, and the floors of the second story of the building were of wood; and that the office was heated by "plug in" portable electric heaters.

 Plaintiff also introduced evidence tending to show that early in June, 1950, she was contemplating the storage of her household goods pending her removal from her former home on Washington Terrace in St. Louis to a residence, near Mountain Grove, which was then in the process of

construction. She consulted the classified telephone directory of Greater St. Louis, issued in 1949, and saw defendant's advertisement. The advertisement included a picture or "cut" of defendant's 7-story building at 5619 Delmar and legends were printed vertically on the reader's right, "Fireproof Storage—Sprinkled Warehouse —Low Insurance Rates—Delmar 3500." At that time she did not know that defendant had a warehouse on Hodiamont, and defendant, upon plaintiff's inquiry by telephone did not advise her of its Hodiamont warehouse. She later learned that her goods were to be or were being stored in the Hodiamont Avenue warehouse; but she did not know and defendant did not tell her the Hodiamont warehouse was not fireproof and that it had no sprinkler system. She relied on the legends in defendant's "ad," and would not have stored her goods with defendant in the warehouse where they were destroyed by fire had she known the warehouse was not fireproof. As we said upon the former appeal of this case, "We think the wording of the advertisement might reasonably be understood as a representation that all of defendant's storage facilities were fireproof and were equipped with sprinkler systems. We believe it could be reasonably found that the advertisement was intended and designed to convey that impression to the public generally including plaintiff(s). The intended design of the advertisement, in our view, was a jury question." [274 S.W.2d 316.] Plaintiff's testimony and the evidence tending to show the kind of building in which plaintiff's goods were stored on Hodiamont were substantial in supporting all of the factual elements of actionable fraud, as frequently stated by this court. See Latta v. Robinson Erection Co., 363 Mo. 47, 248 S.W.2d 569, at page 576, and authorities therein cited.

 As we have noted supra, defendant-appellant contends the bailment contract relieved defendant from liability for fire. The storage order signed by plaintiff and the warehouse receipt issued by defendant contained the provision that the depositor "assumes responsibility * * * for * * * fire * * *. The depositor must carry own insurance against fire and other losses or damage to property stored." Defendant-appellant cites cases in which the alleged bailor was not subject to the Act. See Monsanto Chemical Company v. American Bitumuls Co., Mo.Sup., 249 S.W.2d 428; and Wells v. Porter, 169 Mo. 252, 69 S.W. 282. We think defendant-appellant does not differentiate a fire due to no negligence of the warehouseman and one occasioned by the warehouseman's negligence. It is provided that a warehouseman may insert in a receipt, issued by him, "any other terms and conditions", provided that such terms and conditions "shall not * * * in any wise impair his obligation" to exercise the prescribed degree of care in the safekeeping of goods entrusted to him. § 406.040, RSMo 1949, V.A.M.S. It would seem that the provision in the storage order and warehouse receipt, insofar as the provision is construed as relieving the warehouseman-defendant from the exercise of the prescribed degree of care is invalid. The warehouseman may not avoid liability for his negligence. § 406.040, supra.

 A plaintiff (or defendant) may join as many claims as he has against an opposing party. Section 509.060, RSMo 1949, V.A.M.S. And we have the opinion there was no abuse of the trial court's discretion in refusing to order separate trials of the issues raised by the Counts I and III. Section 510.180(2), RSMo 1949, V.A.M.S. Plaintiff could state her claim (Count I) upon the bailment, the gist of which claim was negligence, and, without repudiating the bailment she could state her claim (Count III) upon the theory of fraud and deceit, although, of course, she could have but one recovery for actual damages. The proof supporting the claim as stated in the one count did not disprove the other. The trial court did not err in submitting both theories to the jury, although, as stated,

plaintiff was limited to one satisfaction for actual damages. Defendant-respondent's contention that evidence introduced tending to support Count III, stating a claim of fraud and deceit, was prejudicial in the trial of plaintiff's claim stated in Count I upon the bailment is not well taken, inasmuch as the jury in assessing punitive damages under plaintiff's Instruction No. 6 must have found for plaintiff on her claim stated in Count III. We have this opinion because, having examined plaintiff's given Instruction No. 6, supra, and the verdict of the jury assessing punitive damages, we believe it is clear that the jury intended to find for the plaintiff on her theory and submission of fraud and deceit. Since plaintiff stated her claim (Count III) on the theory of fraud and deceit and there was substantial evidence supporting that theory as submitted in plaintiff's Instruction No. 1, it is not necessary in this review to examine and rule defendant-appellant's contentions of error in accepting a general verdict which did not allocate damages between Counts I and III. For example, if it were assumed that defendant-appellant's contention of error in failing in Instruction No. 6 to limit defendant's liability for the loss to $50 per item of the goods stored is valid, such error could not be said to be prejudicial inasmuch as the limitation of defendant's liability would be applicable only if the jury found for plaintiff on Count I, whereas, as stated, the jury must have found for plaintiff on her claim stated on the theory of fraud and deceit.

 The trial court did not err in submitting the issue of exemplary or punitive damages. A jury could reasonably infer from defendant's advertisement and from the evidence that defendant's Hodia-

mont Avenue plant was not as stated in the advertisement, that the representations in the advertisement were made intentionally with the wrongful purpose of inducing the public, including plaintiff, to believe all of defendant's storage facilities were as stated in the advertisement, that is, that they were all fireproof and equipped with sprinkler systems. Such inference of intentional wrongful purpose is further supported by the evidence tending to show that defendant did not advise plaintiff, when receiving her goods for storage, that the Hodiamont plant, where her goods were to be and were stored, was not fireproof and was not equipped with a sprinkler system. In this State, punitive damages may be awarded in a case of fraud and deceit where the representations are characterized by legal malice. In speaking of legal malice our courts have in mind "simply the accepted theory of the intentional doing of a wrongful act without just cause or excuse, and not the necessity for the showing of any spite or ill will, or that the particular act was willfully or wantonly done." Jones v. West Side Buick Auto Co., 231 Mo.App. 187, 93 S.W.2d 1083, at page 1088; Luikart v. Miller, Mo.Sup., 48 S.W.2d 867; Finke v. Boyer, 331 Mo. 1242, 56 S.W.2d 372; Kearns v. Sparks, Mo.App., 260 S.W.2d 353; Acy v. Inland Sec. Co., Mo.App., 287 S.W.2d 347.

The judgment should be affirmed.

It is so ordered.

COIL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court.

All of the Judges concur.