Lorene HART, Appellant,

v.

John MIDKIFF and Walter O. Pfeiffer,
Respondents.

No. 46190.

Supreme Court of Missouri,
Division No. 2.

March 9, 1959.

Jerome M. Steiner, University City, Milton W. Schaeffer, Louis E. Zuckerman, St. Louis, for appellant.

Johnson & Meyer, Ferguson, Charles E. Gray, St. Louis, for respondents Midkiff and Pfeiffer.

STORCKMAN, Presiding Judge.

Plaintiff's action is concerned with the ·establishment and operation of a drayage business in the City of St. Louis. She sued in three counts but dismissed the second with prejudice during the trial. As to Count 1, the trial court, at the request of the defendants, directed a verdict in favor of plaintiff Lorene Hart and against the defendant E & L St. Louis Drayage Co., Inc., in the sum of $183.80, but in favor of the other defendants, John Midkiff, Walter O. Pfeiffer, and Cartage Equipment Co., Inc. On Count 3, the jury found in plaintiff's favor and against the individual defendants Midkiff and Pfeiffer in the sum of $13,000 actual damages and $3,500 punitive damages. The defendants Midkiff and Pfeiffer filed a joint motion, directed to Count 3 only, for judgment in accordance with their motion for a directed verdict or, in the alternative, for a new trial. The trial court overruled the motion for judgment but sustained the alternative motion for a new trial on the ground that the court erred in giving Instructions No. 2 and No. 6. The plaintiff appealed from the order granting a new trial.

The respondents undertake to justify the grant of the new trial on the ground of error in Instructions 2 and 6. They also contend that an action for fraud under Count 3 is no longer available to the plaintiff because she has accepted without objection the judgment directed on the contract action in Count 1, and further that the plaintiff did not make a submissible case of fraud or conspiracy. These contentions require a somewhat detailed examination of the pleadings and evidence since the parties are in general disagreement with respect to the legal effect of plaintiff's pleadings as well as the evidence.

Count 1 of the amended petition alleged that a trucking business belonging to plaintiff's former husband, Edward C. Hart, doing business as E & L Delivery Service, and managed by her, was assigned to the plaintiff by Mr. Hart on January 14, 1954; that on or about January 1, 1954, the defendants Midkiff and Pfeiffer "approached plaintiff with the purpose of making use of her knowledge, ability and contacts to en-

gage in the drayage business"; that the individual defendants organized E & L St. Louis Drayage Co., Inc., to operate the drayage business and Cartage Equipment Co., Inc., to hold title to the trucks and equipment to be rented to the drayage company; that the defendants hired the plaintiff at an agreed salary of $72 per week, plus 3 per cent of the gross revenue of the drayage company for a period of one year, and promised to raise her salary after two months to $1.80 per hour, and further agreed to pay her 20 per cent of the net profits as long as the business existed; that defendants further agreed to rent one-half of a garage owned by the plaintiff at a monthly rental of $125 and a room in her residence at $30 per month beginning January 1, 1954; that at the time of the organization of the businesses, the plaintiff "controlled the procurement of certain valuable contracts for drayage with various railroads operating in the City of St. Louis," which contracts were necessary to the operation of the newly formed business and were procured as a result of plaintiff's good will and influence; that on or about June 1, 1954, the defendants, in violation of their agreement, discharged the plaintiff and without notice removed the businesses from plaintiff's premises. The prayer of Count 1 was for salary in the amount of $172.80; rent, $250; commission on the estimated gross revenue from June 15, 1954, to December 31, 1954, $1,800; a share of the annual net profits, $3,000; the value of "plaintiff's good will and valuable contacts," $15,000; and the trade name E & L Delivery Service owned by plaintiff and appropriated by defendant "without permission or purchase," $10,000. The total prayer of Count 3 was for $30,282.80.

Count 2 sought actual and punitive damages for defamation of character. Since it was dismissed by the plaintiff and has no bearing on this appeal, it need not be further noticed.

Count 3 by reference realleges all of the allegations of Counts 1 and 2 and further avers "that all of the above actions were unlawfully in the furtherance of a conspiracy by the defendants in and by the use of their offices in the defendant corporations and as individuals, jointly, and each of them were committed from their beginning and inception with the aim and intent by defendants of defrauding plaintiff by making use of plaintiff's knowledge, experience, contacts and capabilities and defendants knew, intended and planned that throughout the duration of plaintiff's employment that they would so use plaintiff and then discharge her, thereby defrauding her of proper payment for these assets; that all of defendants acts constituted a continued and purposeful conspiracy among the defendants and that said course of conduct was pre-conceived, malicious, wanton and wilful, all to the plaintiff's actual damage of $30,282.80." Punitive damages in the sum of $25,000 were also prayed for in Count 3.

The defendants' joint answer admitted the organization of the corporate defendants and that the individual defendants were the principal officers and majority stockholders; that the plaintiff was employed by the defendant E & L St. Louis Drayage Co., Inc., as an employee but that she was discharged for just cause; that the drayage company rented from plaintiff a garage located at 511 Baden Street; that the tenancy was terminated by the plaintiff but that all rent due thereon was paid; and further alleged that during the course of her employment the plaintiff wrongfully solicited business from the defendants' customers for her own personal gain.

The defendants filed a motion for a directed verdict at the close of plaintiff's case, but offered no evidence. Plaintiff's evidence consisted of the testimony of the plaintiff and Mr. Hart and several documentary exhibits.

From the evidence it appears that Edward Hart started a trucking business in July, 1946, under the name of E & L Delivery Service; he solicited business and drove one of the trucks. His wife Lorene, the plaintiff herein, worked with him as

dispatcher of the delivery trucks. He testified she was one of the best dispatchers in the City. The business name was composed of the first initial of the first names of Mr. & Mrs. Hart. The business was conducted from property on Baden Street, owned by Mr. Hart. A room in the residence had been converted into an office; also there were garage facilities on the premises. The business consisted chiefly of hauling freight by motor trucks to and from railroad loading docks. It appears that if a drayage company was able to bring a sufficient volume of business to the railroad loading dock, the railroad would enter into a contract with such an operator to pay the drayage charges on the freight so delivered. Much was said about these contracts, but their precise nature was not made clear. However, it is sufficient for our purpose that the evidence tended to prove that these railroad drayage contracts and contacts with shippers and consignees were valuable and necessary to the successful and profitable operation of this kind of hauling service. The E & L Delivery Service had secured contracts with all the railroads in St. Louis and East St. Louis. This type of business was highly competitive and survival depended on the service rendered; that is, the prompt and efficient handling of the cargo to and from the railroad loading docks.

The plaintiff and Edward Hart were divorced on July 9, 1952, but the plaintiff continued to work as dispatcher for E & L Delivery Service still owned by her former husband. Mr. Hart was indebted to her on account of the property settlement made at the time of the divorce, but no one seemed to know to what extent. The controversial events with which we are chiefly concerned occurred within the period of November, 1953, to June, 1954.

The evidence tended to prove that Edward Hart took employment with American Carloading Company on December 1, 1953. One of the conditions of his employment was that he could not continue to own a trucking business so, in part payment of what he owed his former wife, he turned the business over to the plaintiff on Thanksgiving Day, 1953. E & L Delivery Service was a going concern but in financial difficulty. Mr. Hart was going to help pay off the bills with his salary from American Carloading. The plaintiff continued to manage the business through December, 1953; its earnings were applied on the debts. At some time and in some manner, not made clear by the evidence, the Baden Street real estate was also transferred to the plaintiff.

On December 28, 1953, Albert Weiss, an attorney, brought the defendants, John Midkiff and Walter O. Pfeiffer, to Mr. Hart's home for the purpose of buying the business that had been "turned over" to the plaintiff. Mr. Hart dealt with them on behalf of his former wife and offered to sell the business for $11,600. A counter-offer was made and accepted which in substance was that the plaintiff "for her share of the business was to put up the contracts and contacts"; a corporation was to be formed with the plaintiff as president; she "would furnish the business and the contracts, and Mr. Pfeiffer and Mr. Midkiff would furnish the money"; the plaintiff was to be hired by the corporation as dispatcher at $60 per week net and 3 per cent of the gross revenue; another company, Cartage Equipment Company, was to be organized to own all vehicles and rent them to the operating company, E & L St. Louis Drayage Company. The corporations were formed and began to operate as of January 2, 1954.

The evidence tends to show the railroad drayage contracts were transferred to the new "E & L" corporation through the combined efforts of the plaintiff and Mr. Weiss, the attorney. Fifty shares of the common stock of E & L St. Louis Drayage Company were issued as follows: The plaintiff, 17 shares, Mr. Midkiff, 17 shares, and Mr. Pfeiffer, 16 shares. Certificate No. 1 for 17 shares shows Lorene C. Hart as the owner, is dated January 7, 1954, and is signed by Walter O. Pfeiffer, as secretary, and Lorene C. Hart, as president. The assignment form and power of attorney on

the back of the certificate also bears the signature, Lorene C. Hart. The plaintiff testified that she signed the certificate in blank at the request of Mr. Weiss at the company office in the presence of Mr. Midkiff, "but not with the reason of signing it away to someone else." No money was paid her and there was no discussion of payment. The evidence indicates that the possession of the plaintiff's stock certificate was not delivered to her, but that it remained in the stock book which was in the custody of Mr. Weiss.

The minutes of the meetings of the stockholders and directors of E & L St. Louis Drayage, Inc., exhibited in evidence, tended to show that Lorene C. Hart, as the owner of 17 shares, was present at the first meeting of stockholders held on January 7, 1954, and was elected a director along with the defendants Midkiff and Pfeiffer. The minutes recite that the articles of incorporation were filed with the secretary of state and the certificate of incorporation was issued January 5, 1954. At the meeting of directors held immediately thereafter, the plaintiff was elected president; the defendant Midkiff, vice-president and treasurer; and the defendant Pfeiffer, secretary of the company. These minutes recite that the stock certificates were issued to the incorporators; nothing is recorded about the blank endorsement. The minutes also recite that Lorene C. Hart was to serve as dispatcher to the company and that she would have charge of the driver personnel; and, that for her services, she was to be paid a salary "which was tentatively agreed to be $60 per week, and 3% of the gross business of the company." The minutes of the meeting of directors held on May 31, 1954, recite that the chairman asked Mrs. Hart if she wished to continue as president in view of the differences that had arisen concerning the tenancy of her property, and that she had stated that she preferred not to be president any longer; that the chairman stated that arrangements would be made to have her removed from the office of president; that Mrs. Hart expressed a desire to continue as an employee of the corporation and, by unanimous consent, it was agreed that she would continue as dispatcher. The minutes in evidence were signed by defendants Pfeiffer and Midkiff but not by the plaintiff; she testified that she did not remember attending any meetings.

E & L St. Louis Drayage Company rented from the plaintiff half of the garage on Baden Street at $125 per month. There was evidence that the parties discussed a lease, but the court sustained defendants' objection because an agreement for a lease was not pleaded and the jury was instructed to disregard such testimony. The office was rented to the company on a monthly basis at $30 per month.

During January and part of February, 1954, the plaintiff ran the business by herself. Sometime at the end of January, Mr. Pfeiffer started coming into the office regularly; thereafter, the plaintiff saw him daily. Mr. Midkiff kept the books and came into the office about once a week.

Mr. Hart testified that he requested the defendants Midkiff and Pfeiffer to reduce to writing the agreement that they were going to take over the business and "were going to issue the stock as they had agreed." Both he and the plaintiff testified that they repeatedly asked the defendants Pfeiffer and Midkiff and their attorney, Albert Weiss, to put the oral agreement of December 28, 1953, into writing and on each such occasion were told that the defendants did not have time but they would meet the plaintiff's wishes; that she was president of the company and they could not do business without her; and, as soon as they got around to it, they would reduce the agreement to contract form. Mr. Hart testified that the value of E & L Delivery Service, including its name, the railroad drayage contracts, and the personal accounts, but not including rolling stock, was about $45,000.

On the Friday before Decoration Day, 1954, the defendant Pfeiffer, without previous notice, told the plaintiff that the company was moving. The trucks were moved

that day and the office several days later. The plaintiff asked Mr. Pfeiffer if she was to move with them and was told to see Mr. Midkiff. The next day Mr. Midkiff told her that she could stay but the terms would have to be different; they would be the terms of the company and his terms. The plaintiff worked for about two weeks before she was discharged; Mr. Pfeiffer just told her that they did not need her any more.

Mr. Hart testified that he filed a petition in bankruptcy on January 17, 1954, because the defendants Midkiff and Pfeiffer and Mr. Weiss suggested him to do so in order to clear the name of E & L. Further evidence will be discussed in the course of the opinion.

 Defendants say because Count 3 was averred to be in the alternative to Count 1 and a verdict was directed for $183.80 on Count 1 to which plaintiff did not object, that the plaintiff must be held to have elected to sue on the contract, to have waived the action for fraud and to be estopped to assert fraud. The mere institution of suit does not constitute a conclusive and irrevocable election of remedies. King v. Guy, Mo.App., 297 S.W.2d 617, 622[4]; Waugh v. Williams, 342 Mo. 903, 119 S.W. 2d 223, 226[4]. The fact that Count 3 was alleged to be in the alternative to Count 1 is not decisive of the question presented.

The respondents depend upon such cases as Baker v. Aetna Casualty & Surety Co., Mo.App., 193 S.W.2d 363, 367, which holds that: "The prosecution of one remedial right to judgment, whether the judgment be for or against the plaintiff, is a decisive act constituting a conclusive election, and barring the subsequent prosecution of an inconsistent remedial right." However, we do not deem these cases to be controlling on the facts of this case.

During the course of the trial, defendants' counsel stated that "we will agree that technically and under the law we would be indebted to them for one month's rent." Plaintiff contended she had not been paid for two days that she worked at $14.40 per day and was also entitled to two weeks' pay at $72 per week because she was discharged without notice. Quite obviously the $183.-80 for which judgment was directed against E & L St. Louis Drayage, Inc., consisted of these items: Garage rent for one month, $125; office rent for one month, $30; and two days' salary at $14.40 per day, $28.80. The proof did not warrant a greater recovery on the rental and employment agreements. The items of rent and compensation were distinct and severable from the other matters pleaded in Count 1 which the plaintiff did not undertake to submit and which must be deemed to have been abandoned as the basis of recovery under that Count. Furthermore, in the final submission and recovery on Count 3, the parties liable were different than on Count 1.

"The doctrine of election of remedies can only properly be invoked where an election has been made as between inconsistent remedies." In re Franz' Estate, 344 Mo. 510, 127 S.W.2d 401, 406[15]. In these circumstances the remedies were not inconsistent. Furthermore, the doctrine of election of remedies has no application where a party has in fact only one available remedy, although he may think he has another which he pursues without avail. Pemberton v. Ladue Realty & Construction Co., 359 Mo. 907, 224 S.W.2d 383, 385[4]. The contention is ruled against the respondents.

 The respondents further contend that the plaintiff did not make a submissible case as to Count 3 either on the theory of fraud or conspiracy. The appellant asserts this question is not reviewable because the respondents sought and obtained a new trial citing Schneider v. St. Louis Public Service Company, Mo., 238 S.W.2d 350; however, the ruling in the Schneider case was reviewed and corrected in Lilly v. Boswell, 362 Mo. 444, 242 S.W.2d 73, 77[11]. The question of whether the plaintiff made out a case for the jury is basic and will be reviewed where the case reaches the appellate court upon proper appeal. Lilly v. Boswell,

supra. See also Bailey v. Interstate Airmotive, 358 Mo. 1121, 219 S.W.2d 333, 336 [3], 8 A.L.R.2d 710.

With respect to the essential elements required to sustain a tort action for fraud and deceit, the respondents cite such cases as Dolan v. Rabenberg, 360 Mo. 858, 231 S.W.2d 150, 154, wherein it is held a showing must be made that " * * * 'a representation was made as a statement of fact, which was untrue and known to be untrue by the party making it, or else recklessly made; that it was made with intent to deceive and for the purpose of inducing the other party to act upon it; and that he did in fact rely on it and was induced thereby to act to his injury or damage.' " The respondents contend that such an action cannot be predicated upon a promise to enter into a lease and to reduce to writing the agreement for plaintiff's compensation. Nothing is said in the statement of the point relied on with respect to plaintiff's contention that the respondents represented to her that she was to own a share of the business; however, in the written argument the respondents assert that there was no evidence that she was to receive and keep 17 shares of the stock and that there is no evidence as to the exact terms of the lease or her ownership of a share of the business.

As we have indicated there is evidence from which the jury could find that Mr. Hart relinquished to the plaintiff his right to the name "E & L," the railroad drayage contracts, and the customer contacts. The time when this was done is not controlling since it is readily apparent that the respondents dealt with the plaintiff on the basis of her having the ownership or control of these matters, and the name was adopted by the new corporation and the contracts and accounts were acquired by it. There is no claim that anyone asserts a superior title to these assets. The evidence tends to show, and it is not contradicted, that the respondents, accompanied by their attorney, sought her out on December 28, 1953, and negotiated with her and Mr. Hart, as her representative, for the acquisition of these business assets, as well as her employment presumably because of her experience with the business as a going concern, and also for the rental of a portion of her property.

We cannot agree with respondents that no significance can be attached to the fact that she subscribed for 17 shares, which is approximately one-third of the stock ownership of the new corporation. She signed the articles of incorporation, which require a statement of the names and places of residence of the several shareholders. Section 351.055 RSMo 1949, V.A.M.S. In Williams v. Everett, Mo., 200 S.W. 1045, 1050[5], which was an action for the conversion of shares of corporate stock, it was held that the articles of incorporation constituted the legal title of each of the incorporators to the number of shares stated, which was not affected by any agreement which the parties may have between themselves. Obviously, the respondents cannot be heard to say that the corporation in which they have the controlling stock interest did not receive the benefit of the "E & L" name which is also required by the statute to be given in the articles of incorporation. 200 S.W. 1050 [10]. The fact that 17 shares were allocated to the plaintiff permits the inference that these were not intended as merely qualifying shares in order to have the minimum number of incorporators required by law. It is further significant that the plaintiff was elected president of the corporation. This position and her employment as a dispatcher indicates a purpose to acquire a going business. Except that she was requested to do so by Mr. Weiss, the record does not disclose why she endorsed the stock certificate in blank. She testified, however, her purpose was not to vest anyone else with title to the shares.

While a contract or a conveyance may be set aside because of fraud or deception, Ellis v. Farmer, Mo., 287 S.W.2d 840, 851[9], such a remedy would not be effective in this case to restore the status quo. In the nature of things this could not be done and the evidence tends to show the inability of the plaintiff to recapture the business or its ben-

efits. The end result is that the respondents and the corporation which they control have obtained the benefit of the established business name, the railroad drayage contracts, and the customer contacts of a going business, as well as the benefit of six months of plaintiff's services in cementing and making secure the business relationships. On the other hand, the plaintiff was deprived of these assets, the employment in which she was experienced, and a tenant for her property. That does not appear to be a fair exchange.

The representation that the plaintiff was to have a share of the business, as measured by the 17 shares allocated to her, as well as other benefits, was a matter of fact within the knowledge and control of the respondents. Brown v. Sloan's Moving & Storage Co., Mo., 296 S.W.2d 20, 25[7]. The jury could infer from the fact that the certificate was not delivered to her, that she was required to endorse it in blank, that the business was moved, and she was discharged after less than six months, and the other facts in evidence, the falsity of the representation, the intent to deceive and plaintiff's reliance upon it. There was also evidence from which the jury could infer that plaintiff had been damaged. Regardless of what other remedies may have been available to plaintiff, we cannot say that the evidence was insufficient to establish the constitutive elements of an action for fraud and deceit.

Nor can we agree the evidence was insufficient to permit an inference of a conspiracy on the part of the respondents. Their combined holdings gave them control of the drayage company. They were represented by the same attorney and the evidence tends to prove they were working in concert. The evidence was sufficient to make a submissible case of a conspiracy to bring about the result accomplished. Wickersham v. Johnson, 51 Mo. 313.

■ As we understand her contention, the appellant asserts initially that the trial court's order granting a new trial for er-

ror in the giving of Instructions 2 and 6 is "null and void" because the order was made more than 30 days after verdict and judgment and "it does not specify any factual or discretionary grounds." The appellant asserts as a corollary of this contention that the review on this appeal is limited to a determination of whether the trial court exercised a sound judicial discretion in granting the new trial. The authorities cited by the appellant do not support her contention. The basis of appellant's misconception seems to be a belief that the specification of the grounds for new trial in the motion and in the order are insufficient. Both the motion and the order referred to the instructions by numbers and stated in general terms that the court erred in giving them. 42 V.A.M.S. Supreme Ct. Rule 3.23 provides that a general allegation of error with respect to instructions is sufficient. See also Section 510.210 RSMo 1949, V.A.M.S. White v. St. Louis Public Service Co., 364 Mo. 111, 259 S.W.2d 795, 798[3]. We find no merit in the appellant's procedural contentions and will consider the merits of the errors alleged.

■ Instruction 2 was plaintiff's verdict directing instruction on Count 3. In several instances the respondents complain of this instruction because the facts hypothesized were not within the allegations of plaintiff's petition. While fraud is not pleaded with the particularity required by § 509.160, the respondents are deemed to have waived objections to the petition by failing to require a more definite statement or a bill of particulars. Hamilton v. Linn, 355 Mo. 1178, 200 S.W.2d 69, 71[10].

■ Where evidence in support of an issue submitted has been admitted without objection, a complaint that such issue was not raised by the pleading is not available. Section 509.500; Evett v. Corbin, Mo., 305 S.W.2d 469, 474[6]. Our liberalized pleading practice tends to emphasize the evidence properly admitted as the standard for determining whether the issues submitted by the instructions are properly in the case.

██ An instruction which is not supported by the evidence is erroneous in that it is misleading and confusing. Quigley v. St. Louis Public Service Co., Mo., 201 S.W. 2d 169, 171[4]; Gundelach v. Compagnie Generale Transatlantique, Mo., 41 S.W.2d 1, 2[1]; Setser v. St. Louis Public Service Co., Mo.App., 209 S.W.2d 746, 752[9]. Instruction 2 offends this requirement in several particulars. There was no evidence to support the submission that the corporations to be formed "would enter into a lease for her premises"; the evidence offered was ruled out as not being within the pleadings and the jury was instructed to disregard it. Also there was no evidence that the company office was moved from plaintiff's house "without notice to the plaintiff" and that factual hypothesis should not have been submitted.

██ Instruction 2 is further reversibly erroneous in that it permits the jury to take into consideration elements of damages not supported by the evidence in that it told the jury it could assess plaintiff's damages at a sum "not to exceed $30,282.80 prayed in the petition." Specially pleaded as a part of this total were these items of damages which were not proved: two weeks' salary, $144; garage rent, $125; commission on gross revenue, $1,800; and share of net profits, $3,000. The value of the "E & L" name, the railroad drayage contracts and the customer accounts were separately pleaded and proven. Assuming, as we must, that the jury followed the instruction, we cannot say that this error did not influence the amount of the verdict. Girratono v. Kansas City Public Service Co., 363 Mo. 359, 251 S.W.2d 59, 65[10]; Van Buskirk v. Quincy, O. & K. C. R. Co., 131 Mo. App. 357, 111 S.W. 832. Also the figure of $30,282.80 is $60 greater than the total of the items specially pleaded.

The respondents further contend there was no evidence to support the hypothesis that the plaintiff "was in possession of certain railroad contracts mentioned in the evidence." This may be discussed in connection with the further contention that the testimony "did not raise an issue of fact for the jury as to whether plaintiff owned this business prior to December 28th, 1953." As we have previously indicated the evidence tends to show that the defendant drayage company acquired the E & L name and the other business assets from the plaintiff although the testimony is not clear as to the time Mr. Hart turned them over to her. This discrepancy in time may go to the credibility of the witnesses, but it does not destroy the proof that the plaintiff had the possession of the drayage contracts in sufficient time to release them and assist in their transfer to the E & L St. Louis Drayage Company. So far as appears from the record the company's enjoyment of the contracts has not been disturbed or questioned. We do not think the jury was mislead by reference to plaintiff's interest as the "possession" of the contracts.

The respondents further say the plaintiff did not prove that the respondents entered into a conspiracy "prior to December 28th, 1953." The precise time when a conspiracy to defraud is entered into can seldom be shown by direct evidence. It seems unnecessary to the case that the conspiracy be entered into before the day of the conference; however, standing alone we do not think this would constitute reversible error.

The evidentiary fact that the plaintiff received no money for the 17 shares of stock bore upon the question of whether she intended by her endorsement of the certificate to sell or transfer her share of the business or the shares of stock evidencing such interest. We find no error in submitting the hypothesis that she was not paid for the shares although the better practice would have been to submit the ultimate fact.

██ Plaintiff's Instruction 6 submitted the issue of punitive damages. The respondents say the giving of this instruction was error because Count 3 undertook to plead an action on contract and that punitive damages cannot be recovered for a breach of contract. Although Count 3 is by no means a plain and concise statement of

the facts showing the relief claimed, § 509.-050, we believe the cause of action stated is a conspiracy to defraud and not on contract. It charges that the acts of the defendants were "in the furtherance of a conspiracy by the defendants in and by the use of their offices in the defendant corporations and as individuals, jointly, and each of them were committed from their beginning and inception with the aim and intent by defendants of defrauding plaintiff" by making use of her knowledge, experience, and contacts and then discharging her without making proper payment for the business assets. The charge of conspiracy is heavily stressed in the pleadings and instructions; however, the gist of an action of conspiracy to defraud is not the conspiracy but the fraud done in furtherance of the conspiracy. Steinger v. Smith, 358 Mo. 39, 213 S.W.2d 396, 399[3]; 15 C.J.S. Conspiracy § 9 P. 1004. It has been said that "it is essential to a charge of conspiracy to defraud—such being the particular conspiracy here involved—that it appear that there was some designed and positively fraudulent artifice employed, or that a fraudulent intent existed on the part of the parties sought to be held, and that such fraud or artifice was practiced upon the party defrauded, to his damage." McCarty v. Hemker, Mo. App., 4 S.W.2d 1088, 1092[2]. Proof of a conspiracy in a fraud case is of value chiefly in permitting the plaintiff to hold one party responsible for the acts of another. Medich v. Stippec, 335 Mo. 796, 73 S.W.2d 998, 1001[4]. In spite of its indefinite and uncertain allegations, Count 3 sounds in tort; that is, a conspiracy to defraud which may carry with it the assessment of punitive damages.

Instruction 6, in substance, told the jury, if it found for the plaintiff on Count 3, that "you may assess damages for example's sake, and by way of punishment" of the respondents. Count 3 alleges that the defendants' "course of conduct was preconceived, malicious, wanton and wilful," but the instruction wholly fails to hypothesize on any of these necessary elements. Jeck

v. O'Meara, 343 Mo. 559, 122 S.W.2d 897, 903[5]; Acy v. Inland Security Company, Mo.App., 287 S.W.2d 347, 352[9]. Other matters complained of can be considered and remedied where necessary on a retrial of the cause.

For the errors noted the order granting a new trial is affirmed and the cause remanded.

All concur.